Nicholas J. Ferraro (State Bar No. 306528)
Lauren N. Vega (State Bar No. 306525)
Xavier L. Woodford (State Bar No. 355326)
Ferraro Vega Employment Lawyers, Inc.
3333 Camino del Rio South, Suite 300
San Diego, California 92108
(619) 693-7727 main / (619) 350-6855 facsimile
nick@ferrarovega.com / lauren@ferrarovega.com
xavier@ferrarovega.com

*Attorneys for Plaintiffs David Victor Miranda & Veon Carroll*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID VICTOR MIRANDA and VEON CARROLL, on behalf of others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CENTERRA SERVICES INTERNATIONAL, INC., CENTERRA GROUP, LLC, and CONSTELLIS, LLC and DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | Case No. 3:24-cv-2340-BAS-MMP<br><br>*Assigned to Hon. Cynthia Bashant*<br>*Referred to Hon. Michelle M. Pettit*<br><br>**Plaintiffs' Opposition to Defendants' Motion to Dismiss Second Amended Class and Collective Action Complaint**<br><br>Date:　　　May 30, 2025<br>Dept:　　　12B<br><br>*[No Oral Argument Unless Ordered by the Court]* |

3:24-cv-2340-BAS-MMP

Plaintiffs' Opposition to Defendants' Motion to Dismiss

## TABLE OF CONTENTS

I.      **INTRODUCTION** .................................................................................. **1**

II.     **LEGAL ARGUMENT REGARDING JURISDICTION** ................................ **1**

A.      This Court has jurisdiction over the entire FLSA action, including non-California employees**. ............................................................................................... 1**

    1.      To avoid an advisory opinion, the Court should wait to rule on jurisdictional issues until out-of-state workers have "opted in**."…………..1**

    2.      Bristol-Meyers Does Not Apply to FLSA actions…………………………....**2**

    3.      A decision from the Ninth Circuit is forthcoming…………………………**6**

III.    **LEGAL ARGUMENT FOR MOTION TO DISMISS** .................................. **6**

A.      Legal Standard……………………………………………………………….**6**

B.      Most of Plaintiff's allegations are not "on information and belief," and those that are comply with pleading standards………………………………**6**

C.      The joint employer, integrated enterprise, alter ego allegations suffice. Joint employment…………………………………………………...**7**

D.      Plaintiffs' first through fourth causes of action state valid claims………………**10**

    1.      Plaintiffs' SAC comports with Landers……………………………………..**10**

    2.      Cash-in-lieu of benefits, including "Health & Welf" cash payments under the SCA, must be included in the regular rate…………..**11**

        i.      The California state law claims for meal period premiums and sick paid, which are payable at the "regular rate" also remain…………………………………………………………...**16**

        ii.     The regular rate is not improperly calculated in the SAC…………**17**

E.      Plaintiffs' fifth and sixth claims (for meal and rest breaks) state a legally cognizable claim for relief…………………………………………………**17**

F.      Plaintiffs have a private right of action to seek wages, including sick pay, and thus the seventh cause of action should remain…………………………………**18**

G.      Plaintiffs' so-called "derivative claims", in the tenth through thirteenth causes of action, adequately state a claim…………………………………………………**20**

i

Table of Contents

**H.**    Plaintiffs' claim for Section 204 violations is a valid claim……………………..**20**

**I.**    The ninth claim for wage statement violations includes detailed allegations and states a cognizable injury…………………………………………………………...**21**

**J.**    The tenth claim for waiting time penalties states sufficient facts………………..**23**

**K.**    Plaintiff pleads a valid 12th claim for failure to provide time records…………..**24**

**L.**    The thirteenth cause of action under the UCL is adequately stated and seeks restitution for claims of which there is no adequate legal remedy………………**24**

**IV.**    **CONCLUSION** ...................................................................................... **25**

Table of Contents

# TABLE OF AUTHORITIES

## Cases

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*

368 F.3d 1174 (9th Cir. 2004)................................................................................2

*Alabsi v. Savoya, LLC*

2019 WL 1332191 (N.D. Cal. Mar. 25, 2019).....................................................23

*Arends v. Select Med. Corp.*

2021 WL 4452275 (C.D. Cal. July 7, 2021) ..........................................................4

*Arnold v. Ben Kanowsky*

(1960) 361 U.S. 388 (1960).................................................................................16

*Ashcroft v. Iqbal*

556 U.S. 662 (2009) ...............................................................................................6

*Barnes v. Akal Security, Inc.*

2005 WL 1459112 (D. Kan., June 20, 2005).......................................14, 15, 16

*Bell Atl. Corp. v. Twombly,*

*550 U.S. 544 (2007)* ..............................................................................................7

*Blantz v. Cal. Dep't of Corr. & Rehab.*

727 F.3d 917 (9th Cir. 2013)..................................................................................6

*Bonnette v. California Health & Welfare Agency*

704 F.2d 1465 (9th Cir. 1983)................................................................................7

*Boon v. Canon Bus. Sols., Inc.*

592 F. App'x 631 (9th Cir. 2015) .........................................................................11

*Bristol-Meyers Squibb Co. v. Superior Court of California*

582 U.S. 255 (2017) ...................................................................................2, 3, 4, 5

*Cabrera v. Bayer Healthcare, LLC*

2019 WL 1146828 (C.D. Cal. Mar. 6, 2019).........................................................4

*Campanelli v. Image First Healthcare*

2018 WL 934545 (N.D. Cal. Feb. 16, 2018)..........................................................7

*Campbell v. City of Los Angeles*
   903 F.3d 1090 (9th Cir. 2018 .............................................................................1

*Chavez v. Stellar Mgmt. Group VII, LLC*
   2020 WL 4505482 (N.D. Cal. Aug. 5, 2020)......................................................4

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*
   467 U.S. 837 (1984) ...................................................................................12, 15

*Cleveland v. City of Los Angeles*
   420 F.3d 981 (9th Cir. 2005).............................................................................16

*Cook v. Matrix Absence Mgmt.*
   737 F. Supp. 3d 885 (N.D. Cal. 2024) ..............................................................18

*Cooley v. Air Methods Corp.*
   2020 WL 9311858 (D. Ariz. Sept. 25, 2020)......................................................4

*Dept. of Ind. Relations v. UI Video Stores, Inc.*
   55 Cal.App.4th 1084 (1997)..............................................................................18

*Eason v. Roman Catholic Bishop of San Diego*
   414 F.Supp.3d 1276, 1282 (S.D. Cal. 2019) .....................................................25

*Espejo v The Copley Press*
   13 Cal App 5th 329 (2017)................................................................................19

*Ferra v. Loews Hollywood Hotel, LLC*
   11 Cal. 5th 858 (2021)......................................................................................17

*Flores v. City of San Gabriel*
   824 F.3d 895 (9th Cir. 2016)............................................................12, 13, 14, 15, 16

*Garcia v. Anane Enter. LLC*
   2025 U.S. Dist. LEXIS 54222 (E.D. Cal. Mar. 21, 2025) .............................8, 9

*Garcia v. Williams Scotsman, Inc.*
   2024 U.S. Dist. LEXIS 238376 (C.D. Cal. Dec. 10, 2024) ..............................10

*Gilburd v. Rocket Mortg. LLC*
   2023 WL 8480062 (D. Ariz. Dec. 7, 2023)........................................................3

Table of Authorities

*Goldstein v. Gen. Motors LLC*

  517 F.Supp.3d 1076 (S.D. Cal. 2021) ...................................................................25

*Haro v. Walmart, Inc.*

  2023 WL 2239333 (E.D. Cal. Feb. 27, 2023) ........................................................3

*Hill v. Walmart, Inc.*

  32 F.4th 811 (9th Cir. 2022)..................................................................................24

*In Re Work Uniform Cases*

  133 Cal App 4th 328 (2005)..................................................................................19

*Johnson v. Serenity Transportation, Inc.*

  141 F. Supp. 3d 974 (N.D. Cal. 2015) ...................................................................7

*Landers v. Quality Communs., Inc.*

  771 F.3d 638 (9th Cir. 2015)............................................................................10, 11

*Lightfoot v. Cendant Mtg. Corp.*

  580 U.S. 82 (2017) .................................................................................................1

*Loper Bright Enterprises v. Raimondo*

  603 U.S. 369 (2024) ........................................................................................12, 16

*Loreto v. Gen. Dynamics Info. Tech., Inc.*

  2021 WL 1839989 (S.D. Cal. May 7, 2021)........................................................16

*Martinez v. Combs*

  49 Cal. 4th 35 (2010)..............................................................................................8

*Masters v. Md. Mgmt. Co.*

  493 F. 2d 1329 (4th Cir. 1974)..............................................................................14

*McBain v. Behr Paint Corp.*

  2017 U.S. Dist. (N.D. Cal. Apr. 3, 2017)..............................................................10

*McCurley v. Royal Seas Cruises, Inc.*

  331 F.R.D. 142 (S.D. Cal. 2019)............................................................................4

*McGowan v. McLane Co.*

  2025 U.S. Dist. LEXIS 83632 (C.D. Cal. Mar. 3, 2025) .....................................22

Table of Authorities

*Mie Yang v. Francesca's Collections, Inc.*

2018 WL 984637 (N.D. Cal. Feb. 20, 2018)................................................................23

*Ming-Hsiang Kao v. Holiday*

58 Cal. App. 5th 199, 205 (2020)........................................................................8

*Molock v. Whole Foods Mkt. Group, Inc.*

952 F.3d 293 (D.C. Cir. 2020) ........................................................................1

*Murphy v. Kenneth Cole Prod.*

40 Cal.4th 1094 (2007)................................................................................18, 19

*Naranjo v Spectrum Security Services*

13 Cal 5th 93 (2022)......................................................................................19

*Oliverio-Still v. AVMAC, LLC*

2025 U.S. Dist. LEXIS 37731 (S.D. Cal. March 3, 2025)....................12, 13, 14, 15, 16

*Parsittie v. Schneider Logistics, Inc.*

2022 U.S. Dist. LEXIS 215838, at *7 (C.D. Cal. Sep. 27, 2022)................................10

*Pavloff v. Cardinal Logistics Mgmt. Corp.*

2020 WL 6828902 (C.D. Cal. Oct. 2, 2020) ........................................................3

*Pellegrini v. Huyssen, Inc.*

2017 WL 2908794 (S.D. Cal. July 7, 2017)............................................................4

*Perez v. DXC Tech. Servs. LLC*

2020 U.S. Dist. (N.D. Cal. Sep. 14, 2020) ............................................................8

*Perez v. OWL, Inc.*

110 F.4th 1296 (11th Cir. 2024)........................................................................15

*Phelps v. Parsons Technical Support, Inc.*

2010 U.S. Dist. LEXIS 116197 (S.D. Ind., Oct. 29, 2010)....................................15, 16

*Powell v. Walmart Inc.*

2021 WL 369550 (S.D. Cal. Feb. 3, 2021) ............................................................23

*Preiser v. Newkirk*

422 U.S. 395, 401 (1975) ................................................................................1

vi

Table of Authorities

*Richter v. AutoZoners, LLC*
  WL 7329168 (D. Mont. Nov. 7, 2023)...........................................................................3

*Rivera v. Jeld-Wen Inc.*
  2022 U.S. Dist. LEXIS 142129 (S.D. Cal. Aug., 9, 2022) ..........................................25

*Rodriguez v. Taco Bell Corp*
2013 WL 5877788 (E.D. Cal. Oct. 30, 2013). .................................................................21

*Sanders v. W. Express, Inc.*
  2021 WL 2772801 (E.D. Wash. Feb. 11, 2021) ...........................................................4

*Schueneman v. Arena Pharms., Inc.*
  840 F.3d 698 (9th Cir. 2016)........................................................................................9

*Seiffert v. Qwest Corp.*
  2018 WL 6590836 (D.Mont. Dec. 14, 2018) ...............................................................4

*Suastez v. Plastic Dress Up*
  31 Cal.3d 774 (1982)....................................................................................................19

*Swamy v. Title Source, Inc.*
  2017 WL 5196780, *2 (N.D. Cal. Nov. 10, 2017).........................................................4

*Thomas v. Kellogg Co.*
  2017 WL 5256634 (W.D. Wash. Oct. 17, 2017) ..........................................................4

*Thompson v. Davis*
  295 F.3d 890 (9th Cir. 2002)........................................................................................6

*United States ex rel. Vatan v. QTC Med. Servs., Inc.*
  721 F. App'x 662 (9th Cir. 2018) .................................................................................6

*Valenzuela v. Everi Games Inc.*
  2024 U.S. Dist. LEXIS 126330 (C.D. Cal. July 17, 2024) ..........................................17

*Vanorden v. ECP Optometry Svcs. LLC*
  2024 WL 5200483, at *7 (D. Ariz. Dec. 23, 2024)........................................................3

*Varsam v. Lab. Corp. of America*
  120 F. Supp. 3d 1173 (S.D. Cal. 2015) ........................................................................23

Table of Authorities

*Vasquez v. Draper and Kramer Mortgage, Corp.*

  2022 WL 22912227, at *5 (C.D. Cal. March 17, 2022) ................................................. 3

*Ware v Merrill Lynch, Pierce, Fenner & Smith, Inc.*

  24 Cal App 3d 35 (1972) ............................................................................................ 19

*Waters v. Day & Zimmermann NPS, Inc.*

  23 F.4th 84 (1st Cir. 2022) ................................................................................ 3, 5, 17

*Waters v. Lockheed Martin Corp.*

  2025 U.S. Dist. LEXIS 56140 (C.D. Cal. Jan. 31, 2025) ............................................ 11

**Statutes**

29 U.S.C. § 207(a)(1) ..................................................................................................... 12

29 U.S.C. § 207(e)(1)-(8) ......................................................................................... 12, 13

41 U.S.C. § 355 .............................................................................................................. 13

41 U.S.C. § 6707(e) ....................................................................................................... 12

Labor Code § 200 ..................................................................................................... 18, 19

Labor Code § 203 ........................................................................................................... 23

Labor Code § 204 ..................................................................................................... 20, 21

Labor Code § 210 ..................................................................................................... 20, 21

Labor Code § 218 ........................................................................................................... 20

Labor Code § 226 ............................................................................................... 21, 22, 24

Labor Code § 226(b) ...................................................................................................... 24

Labor Code § 245(b) ...................................................................................................... 20

Labor Code § 246 ........................................................................................................... 19

Labor Code § 248.5(e) ................................................................................................... 19

Labor Code §§ 204 ......................................................................................................... 20

Labor Code §§ 218.5, 218.6, 1194 ................................................................................ 18

Labor Code sec. 2802 ..................................................................................................... 20

**Rules**

[Fed. R. Civ. Proc.] 12(b)(6) ...................................................................................... 9, 11

23 F.4th at 96-97 .............................................................................................................. 5

viii

Table of Authorities

Rule 12(b)(6) .................................................................................................................. 9

ix

Table of Authorities

## I.   **INTRODUCTION**

Defendants Centerra Services International, Inc., Centerra Group, and Constellis, have filed an omnibus motion to dismiss that makes every argument to dismiss this case. Most of these arguments are without merit or overreaching and are addressed below.

## II.   **LEGAL ARGUMENT REGARDING JURISDICTION**

### A.   **This Court has jurisdiction over the entire FLSA action, including non-California employees.**

Defendants' jurisdictional challenge as to non-California employees should be denied because the challenge is premature, as no such employees have opted in to this case, and in any event, fails on the merits.

#### 1.   **To avoid an advisory opinion, the Court should wait to rule on jurisdictional issues until out-of-state workers have "opted in."**

Prospective FLSA members are not parties until filing an opt-in form. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018) ("The opt-in plaintiffs thus choose whether and when to 'become parties to a collective action only by filing a written consent with the court."). No out-of-state employees have consented to join. Any opinion purporting to determine jurisdiction over such non-parties would be purely advisory. *Cf. Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."). This is especially true when deciding personal jurisdiction, which entails a court's "power over the parties before it." *Lightfoot v. Cendant Mtg. Corp.*, 580 U.S. 82, 95 (2017). Such motions to find lack of personal jurisdiction are "premature—not to mention 'novel and surely erroneous.'" *Molock v. Whole Foods Mkt. Group, Inc.*, 952 F.3d 293, 298 (D.C. Cir. 2020). A court in W.D. Wash. recently arrived at this same conclusion in a well-reasoned and current opinion that denied the defendant's motion on the same basis. *Dittebrandt v. H&E Equpment Srvs.*, No. C25-0324-SKV, at *3-5 (W.D. Wash., May 15, 2025).

Rather than decide on the issue now—at the pleading stage—the better approach allows this case to proceed to discovery to determine the scope of the collective and

Plaintiffs' Opposition to Defendants' Motion to Dismiss

Defendants' contacts with California, among other things. After such discovery and notice to potential collective members, Defendants may ask the Court to dismiss any out-of-state opt-in plaintiffs for lack of jurisdiction or, alternatively, the case can be transferred to a district where jurisdiction over all opt-ins is undeniable. This approach preserves Defendants' defense and ensures all potential collective members are notified so they can toll their individual statutes of limitations and also permits the Court to decide the jurisdiction issue with a complete record, over individuals whose residency and identities are actually known rather than purely speculative. For example, discovery may establish general or specific jurisdiction, or the Court may be able to take pendent jurisdiction over the claims of opt-in plaintiffs if and when they actually become parties. *See Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004) (adopting doctrine of pendent personal jurisdiction, which permits courts to compel defendants who already must appear in forum to defend against one claim to "answer other claims in the same suit arising out of a common nucleus of operative facts"). That determination is not possible now given the parties do not know how many out-of-state employees will join the lawsuit, where they will be located, and whether it would be practical to decide their claims in one suit. Because Defendants' arguments are premature, they should be rejected.

### 2.    *Bristol-Meyers* Does Not Apply to FLSA actions.

Defendants' jurisdiction argument hinges on a misreading of the Supreme Court's ruling in *Bristol-Meyers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 265 (2017). *Bristol-Myers* considered a state court's approach permitting the exercise of personal jurisdiction over claims brought by out-of-state plaintiffs even in the absence of "any adequate link between the State and the nonresidents' claims." *Id.* at 1781. That approach implicated the Fourteenth Amendment's Due Process Clause, which "limits the personal jurisdiction of state courts." *Id.* at 1779. The Supreme Court held this approach to personal jurisdiction was incompatible with the Fourteenth Amendment's due process limitations. The "federalism interest" proved "decisive." *Id.* But whatever federalism

concerns limit the exercise of a state's power to decide state-law claims of nonresidents, no similar concerns apply to a federal court's exercise of authority over federal claims under a statute that permits nationwide collective actions. That is *BMS's* holding applied only to "the due process limits on the exercise of specific jurisdiction by a State" and did not touch "on the exercise of personal jurisdiction by a federal court." *Id.* at 1783-84.

The Fifth Amendment—not the Fourteenth Amendment—limits a federal court's jurisdiction over federal law claims. *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 92 (1st Cir. 2022), cert. denied, No. 21-1192, 2022 WL 1914117 (U.S. June 6, 2022). Under the Fifth Amendment's due process clause, out-of-state plaintiffs may sue to enforce their rights under a federal statute so long as the defendants maintain minimum contacts with the United States. All potential opt-in plaintiffs satisfy this test.

In arguing that *Bristol-Meyers* requires dismissal before an out-of-state plaintiff is even notified, let alone opted-in as a party-plaintiff, is dispositive. Within the Ninth Circuit, however, most district courts have found that *Bristol-Myers* does not apply. [1]

---

[1] *See* (1) *Vanorden v. ECP Optometry Svcs. LLC*, 2024 WL 5200483, at *7 (D. Ariz. Dec. 23, 2024) (certifying collective/rejecting BMS argument, finding "the proper time to take up this complicated issue would be if and when any additional members of the collective attempt to opt in and Defendants believe that personal jurisdiction is lacking as to those new opt-in plaintiffs' claims. But as of now, Defendants only the raise the possibility that jurisdiction would be lacking in relation to claims raise by hypothetical plaintiffs-to-be"); (2) *Gilburd v. Rocket Mortg. LLC*, 2023 WL 8480062, *5 (D. Ariz. Dec. 7, 2023) ("In the years since *Bristol-Myers*, however, district and circuit courts have split on whether *Bristol-Myers* applies to FLSA collective action claims. At present, the Ninth Circuit has not addressed the issue. Although some district courts within the Ninth Circuit have dismissed FLSA claims of employees who cannot establish a connection between their claims and the forum, most have rejected applying *Bristol-Myers* to collective actions arising under the FLSA.") (emphasis added); (3) *Richter v. AutoZoners, LLC*, 2023 WL 7329168, at *5 (D. Mont. Nov. 7, 2023) (certifying collective and ordering notice be provided to collective members, rejecting BMS argument); (4) *Vasquez v. Draper and Kramer Mortgage, Corp.*, 2022 WL 22912227, at *5 (C.D. Cal. March 17, 2022) (preliminarily certifying collective, rejecting BMS argument, and ordering notice provided to nationwide collective); (5) *Haro v. Walmart, Inc.*, 2023 WL 2239333, at * (E.D. Cal. Feb. 27, 2023); (6) *Pavloff v. Cardinal Logistics Mgmt. Corp.*, 2020 WL 6828902, *4 n.2 (C.D. Cal. Oct. 2, 2020); (7) *Cooley v. Air*

Plaintiffs' Opposition to Defendants' Motion to Dismiss

The First Circuit's analysis in *Waters v. Day & Zimmermann NPS, Inc.* gets the analysis correct and does not disregard decades of FLSA precedent or the broad collective action right for employees to join together and seek redress for unpaid wages. *Id*. at 92. In *Waters*, the First Circuit found that while opt-in plaintiffs are parties, the Federal Rule of Civil Procedure governing service of a summons—Rule 4—is concerned only with how a summons may be served. *Id*. at 93. And while the text states that personal jurisdiction can be established by serving a summons if any of three criteria is met, it "nowhere suggests that Rule 4 deals with anything other than service of a summons, or that Rule 4 constrains a federal court's power to act once a summons has been properly served, and personal jurisdiction has been established." *Id.* at 93-94. Thus, in FLSA actions served pursuant to a state long-arm statute, Rule 4 only requires the named plaintiffs to satisfy the Fourteenth Amendment minimum contacts doctrine. *See id.* at 94. Opt-in plaintiffs who have filed consent to join forms with the Court need not separately serve the defendant with process or otherwise comply with the Fourteenth Amendment. *Id.* Instead, the Fifth Amendment limits the authority of the Court after service of process has been effectuated. *Id.* at 96.

The rules for service of process apply to named plaintiffs only and do not impose requirements on individuals who join the action after the summons and complaint have

---

*Methods Corp.*, 2020 WL 9311858, *3 (D. Ariz. Sept. 25, 2020) ("*Bristol-Meyers* does not apply in the FLSA collective action contest; its application would eviscerate FLSA collective actions and thwart Congressional intent."); (8) *Chavez v. Stellar Mgmt. Group VII, LLC*, 2020 WL 4505482, *6-7 (N.D. Cal. Aug. 5, 2020); (9) *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142 (S.D. Cal. 2019); (10) *Seiffert v. Qwest Corp.*, 2018 WL 6590836, *3 (D.Mont. Dec. 14, 2018), motion to certify appeal denied, 2019 U.S. Dist. LEXIS 28658 (D. Mont. Feb. 22, 2019); (11) *Swamy v. Title Source, Inc.*, 2017 WL 5196780, *2 (N.D. Cal. Nov. 10, 2017); (12) *Thomas v. Kellogg Co.*, 2017 WL 5256634, *1 (W.D. Wash. Oct. 17, 2017); (13) *Arends v. Select Med. Corp.*, 2021 WL 4452275, *1 (C.D. Cal. July 7, 2021) ("This Court will follow the thirteen other districts that have held that *Bristol-Myers* does not apply to FLSA actions") (emphasis added); (14) *Sanders v. W. Express, Inc.*, 2021 WL 2772801, (E.D. Wash. Feb. 11, 2021); (15) *Cabrera v. Bayer Healthcare, LLC*, 2019 WL 1146828, at *8 (C.D. Cal. Mar. 6, 2019); and (16) *Pellegrini v. Huyssen, Inc.*, 2017 WL 2908794, *2 (S.D. Cal. July 7, 2017).

Plaintiffs' Opposition to Defendants' Motion to Dismiss

been properly served. Adopting the First Circuit's analysis in *Waters* is not only consistent with the plain language of Rule 4, it also reflects the legislative history and policies behind the FLSA. As the First Circuit points out, "Congress created the collective action mechanism to enable all affected employees working for a single employer to bring suit in a single, collective action." *Id.* at 96-97. The FLSA's purpose was to "target those in interstate commerce" and to "provide a living wage to workers at large, multistate businesses." *See id.* Interpreting the FLSA to bar collective actions by out-of-state employees frustrates employees' ability to pool resources and to litigate their claims efficiently in a single action. *Id.* Forcing plaintiffs to file separate lawsuits in many jurisdictions against the same employer "is not what the FLSA contemplated." *Id.*

The First Circuit's analysis incorporates an interpretation that is consistent with the FRCP, the Constitution, and the legislative history and policies of the FLSA. *Waters* addresses the opinions of the Sixth and Eighth, finding those circuits got it wrong. *Id.* at 97 ("Both opinions instead rely on an erroneous reading of Rule 4" and fail to confront the fact that Rule 4(k) is a "territorial limit" on "effective service" of a summons, and thus logically cannot be read to limit a federal court's jurisdiction after a summons is properly served.") The Second, Fourth, Fifth, D.C., and Ninth Circuits have yet to rule.

Here, if the Court is prepared to determine whether it will have jurisdiction over potential opt-ins who did not live or work in California, it should find join the First Circuit and the plurality of California districts holding that *Bristol-Myers* does not apply to FLSA claims (or that it is premature to apply at this stage).

### 3.    A decision from the Ninth Circuit is forthcoming.

This Court would be within its rights to deny the motion without prejudice (or stay a decision), given that this issue will be decided in (hopefully) short order by the Ninth Circuit.  A Ninth Circuit case addressing *Bristol-Myers*'s applicability to FLSA actions, *Harrington v. Cracker Barrel Old Country Store, Inc.*, No. 24-1979 (9th Cir.), is fully briefed and argued as of February 7, 2025. See Dkt. 11 at 19 n.2.  Plaintiffs contend this is likely the most prudent approach.

Plaintiffs' Opposition to Defendants' Motion to Dismiss

## III.  LEGAL ARGUMENT FOR MOTION TO DISMISS

### A.  Legal Standard

When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

### B.  Most of Plaintiff's allegations are not "on information and belief," and those that are comply with pleading standards.

Defendants argue the SAC fails to state a plausible claim for relief under 12(b)(6) because Plaintiffs' allegations made on "information and belief" fail to satisfy pleading standards.  Relying on *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926–27 (9th Cir. 2013), Defendants argue that the Ninth Circuit does not find allegations made "on information and belief" sufficient under Rule 8.  This argument misstates the law and ignores the voluminous facts in the SAC. *Blantz*, cited by Defendants, concluded the "information and belief" allegations in that complaint were not supported by other allegations in the pleading.  However, as a categorical rule, the Ninth Circuit holds Rule 8(a) permits pleading "on information and belief" when supported by other factual allegations in the complaint.  *See United States ex rel. Vatan v. QTC Med. Servs., Inc.*, 721 F. App'x 662, 664 (9th Cir. 2018).[2]

---

[2] *See also Kryzhanovskiy v. Amazon.com Servs.*, No. 2:21-cv-01292-DAD-BAM, at *23 (E.D. Cal. June 28, 2022) ("Ninth Circuit has held that … a plaintiff can plead sufficient facts on information and belief to state a plausible claim so long as there are additional facts alleged by plaintiff that support her belief."). Even the more stringent Rule 9(b) (pleading fraud) permits pleading "on information and belief" so long as the facts are "peculiarly within the opposing party's knowledge" and "the allegations are accompanied by a statement of facts upon which the belief is founded." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 494 (9th Cir. 2019) (citation omitted); *United States ex rel. Vatan v. QTC Med. Servs., Inc.*, 721 F. App'x 662, 663 (9th Cir. 2018) ("[w]here, as here, the relevant information is within the defendant's exclusive possession and control, such pleading is sufficient to satisfy Rule 9(b)'s particularity requirement" …

Here, Defendants' motion fails to point out any specific instances of "information and belief" pleading it contests, which in effect asks the Court to accept a false categorial rule against "information and belief" statements, then dismiss the entire lawsuit based on these unspecified lines in the SAC.  Defendants' major issue appears to relate to the joint employment allegations. But Defendants' suggestion that all allegations against Defendants are made only on "information and belief" is incorrect. The SAC contains very specific factual allegations regarding Defendants' involvement with the actions giving rise to the lawsuit. *See e.g.,* ECF #18, SAC, ¶ ¶ 21(a)-(m), 22-28. These allegations are not alleged on information and belief.  The SAC further adds that the information and belief allegations in paras. 25 and 26 are "based on the foregoing" recitation of detailed and specific allegations in paras. 19-21 that indeed plead "enough facts to state a claim to relief that is plausible on its face" and contain much more than a bare "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 570.

**C.      The joint employer, integrated enterprise, alter ego allegations suffice.**

***Joint employment.***   "Two or more employers may jointly employ someone for purposes of the FLSA." *See Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983); *see also Johnson v. Serenity Transportation, Inc.*, 141 F. Supp. 3d 974, 994 (N.D. Cal. 2015) (discussing joint employer doctrine available under both the Fair Labor Standards Act and California's labor laws).  Courts apply *Bonnette*'s four factor test, which is guided by "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions, (3) determined the rate and method of payment, and (4) maintained employment records. *Bonnette*, 704 F.2d at 1470; *see also Campanelli v. Image First Healthcare*, 2018 U.S. Dist., 2018 WL 934545, at *3-4 (N.D. Cal. Feb. 16, 2018).

Under California law, there are three alternative tests for determining whether an employment relationship exists: (1) "suffer or permit to work"; (2) "control over the

particularity requirements 'may be relaxed as to matters within the opposing party's knowledge') (internal citations omitted).

Plaintiffs' Opposition to Defendants' Motion to Dismiss

wages, hours, or working conditions"; or (3) "to employ," i.e., to create a common law employment relationship. *Martinez v. Combs*, 49 Cal. 4th 35, 68-77 (2010).

***Integrated enterprise.*** Under the integrated enterprise test, two entities may be treated as a single employer for purposes of liability. *Perez v. DXC Tech. Servs. LLC*, No. 17-cv-06066-BLF, 2020 U.S. Dist., at *13-14 (N.D. Cal. Sep. 14, 2020). To determine whether entities are liable as a single employer or an "integrated enterprise," courts look at: (1) centralized control of labor relations; (2) interrelation of operations; (3) common management; and (4) common ownership or financial control. *Id.*

***Alter ego.*** "[A]lter ego liability depends on both: (1) such unity of interest and ownership that the separate personalities of the corporation … no longer exist, and (2) adherence to the fiction of separate existence would, under the circumstances, promote fraud or injustice." *Ming-Hsiang Kao v. Holiday*, 58 Cal. App. 5th 199, 205, 272 Cal. Rptr. 3d 321 (2020) (internal quotations omitted). More importantly, "The pleading requirements for an alter ego theory of liability are 'not strict' at the motion to dismiss stage." *Garcia v. Anane Enter. LLC*, 2025 U.S. Dist. LEXIS 54222, at *12 (E.D. Cal. Mar. 21, 2025) (citing cases). "[T]he most damning evidence of the unity of interest and identity is often in the hands of the corporation and its principals and can be found nowhere else." *Id.* at *12. "[I]t is sufficient for a plaintiff to plead only two or three of the factors showing unity of interest or identity to withstand a motion to dismiss." *Id.*

***Plaintiff's allegations.*** The SAC alleges Plaintiffs and others experienced wage and hour violations under California and federal law. The SAC alleges Defendants, together, are liable for these violations.  Para. 21 identifies Defendants' policies that define Centerra and Constellis as a single enterprise, and refer to themselves as the "employer" or "Company" to which Plaintiffs and other employees belong.  When Plaintiff Miranda requested his records from the company, the SAC explains that *some* records were provided by Constellis, via its corporate paralegal.  Defendants are all represented by a single law firm, and the request for judicial notice filed by Defendants establishes Defendants have settled prior lawsuits together for their workforce.

Constellis is alleged as the only entity listed on the "Allocation of H&W Contribution" document, a document set forth in para. 50 of the SAC, which is a central piece of evidence in the regular rate of pay, cash-in-lieu of benefits claims. The SAC explains that Plaintiffs exchanged emails with Constellis' management regarding policy and pay changes, including accepting terms of employment in an official offer provided by Constellis management. Centerra, a Constellis company, is listed on the paystubs.

These facts are not threadbare, unsupported allegations, but specific examples of allegations of Defendants' joint control to hire and fire, supervise, manage, determine wage rates, with centralized control of labor relations and interrelation of operations, common management and ownership, and unity of interest—the relevant factors for the three underlying theories of shared liability. On a Rule 12(b)(6) motion, courts should look at the "totality of the working relationship" when reviewing joint employer and related allegations. *See Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016) (restating generally accepted principle that "[o]rdinarily, when we review a motion to dismiss under [Fed. R. Civ. Proc.] 12(b)(6), we accept a plaintiff's allegations as true 'and construe them in the light most favorable' to the plaintiff").

With respect to the alter-ego challenge, Defendants' motion admits the SAC alleges that at least two or three of the factors showing unity of interest or identity may be satisfied due to the facts alleging that Defendants may "share certain human resource functions, paperwork, and employees." *See* ECF #23-1, pp. 11-12. This alone weighs in favor of the 'use of the same offices and employees' factor and the 'identical directors and officers' factor. In *Garcia,* the court identified the plaintiff's allegation that "Plaintiff is *informed and believes*, and based thereon alleges that despite the formation of the purported corporate existence of [Defendants] . . . and each of them, are one and the same with . . . DOES 51 through 100[.]" as sufficient to plead this claim. *Garcia,* supra, at *12-13. Similarly, Plaintiffs' SAC alleges that "Upon information and belief, Defendants acted in all respects pertinent to this action as an alter-ego" and that Defendants jointly operated and controlled the employment of Plaintiffs and other class and collective

Plaintiffs' Opposition to Defendants' Motion to Dismiss

members.  *See* SAC, at ¶¶ 21-22, 26.  The SAC also adequately pleads cites to "lack of segregation of corporate records." *See* ECF #23-1, p. 11. Here, Constellis, LLC and Centerra Group, LLC are both mixed into the corporate employment records, as explained in the SAC, at ¶¶ 21(a)-(m).

To dismiss the claims at the pleading stage simply because *all* potential facts are not alleged, misconstrues the *Twomly/Iqbal* standard.  *Parsittie v. Schneider Logistics, Inc.*, No. CV 19-3981-MWF (AFMx), 2022 U.S. Dist. LEXIS 215838, at *7 (C.D. Cal. Sep. 27, 2022) (*"a plaintiff need only 'allege some facts in support of [a joint employment theory]'"*); *see also, McBain v. Behr Paint Corp.*, No. 16-cv-07036-MEJ, 2017 U.S. Dist., at *13 (N.D. Cal. Apr. 3, 2017) ("Plaintiff has adequately alleged (1) numerous employment documents he received listed '[Defendant]' as his employer, including performance reviews, employee handbook and benefits documents[.]")

**D.    Plaintiffs' first through fourth causes of action state valid claims.**

**1.    Plaintiffs' SAC comports with *Landers*.**

For this challenge, Defendants rely on *Landers v. Quality Communs., Inc.*, 771 F.3d 638, 646 (9th Cir. 2015) to argue that "Plaintiffs 'must allege at least one workweek when [they] worked in excess of forty hours and [were] not paid for the excess hours in that workweek, [etc.]." *See* ECF #23-1, pp. 12-13. However, the *Landers* court also noted that the plausibility determination is "context-specific" and may be established by a wage and hour plaintiff who, for instance, "estimate[s] the length of his average workweek during the applicable period and the average rate at which he was paid, the amount of overtime wages he believes she is owed, or any other facts that will permit the court to find plausibility. *See Garcia v. Williams Scotsman, Inc.*, 2024 U.S. Dist. LEXIS 238376, at *6 (C.D. Cal. Dec. 10, 2024). Few district courts have read *Landers* to require plaintiffs specifically to identify a particular workweek in which wage and hour laws were violated.   "Requiring plaintiffs to allege specific dates . . . and other data giving rise to their claims would rachet up the general pleading standard such that it would resemble the Rule 9 particularity standard which, in contrast to Rule 8, mandates that

Plaintiffs' Opposition to Defendants' Motion to Dismiss

plaintiffs state the 'the who, what, when, where, and how' of their claims . . . the Court agrees with the courts who have found that, to survive a motion to dismiss under 12(b)(6), a Plaintiff need not identify specific dates for a workweek in which wage and hour laws were violated." *Waters v. Lockheed Martin Corp.*, 2025 U.S. Dist. LEXIS 56140, at *9 (C.D. Cal. Jan. 31, 2025) (citing cases).

Nevertheless, the SAC contains many facts relevant to the claims. *See e.g.,* SAC, at ¶¶ 41-61. ("the pay period 9/2/2024 to 9/15/2024." "resulted in unpaid work over 8 hours in a day or 40 hours in a week" and "Plaintiff Miranda recalls being instructed to change his entry from 'False' to 'True' when asked if he took a meal break when in reality, he did not." and "Plaintiff Miranda has a time records fated 12/15/2024[.]"). The Ninth Circuit has found similar allegations sufficiently pled under *Landers*, without specific dates or workweeks. *See e.g., Boon v. Canon Bus. Sols., Inc.*, 592 F. App'x 631, 632 (9th Cir. 2015) ("the Ninth Circuit found that a Plaintiff sufficiently pled an overtime claim under *Landers* when the plaintiff "identified tasks for which he was not paid and alleged that he regularly worked more than eight hours in a day and forty hours in a week."). Similar to Plaintiffs' SAC, the court in *Waters* denied defendants motion to dismiss the minimum wage claim because "the allegations give rise to the inference that there was at least one workweek in which Plaintiff and putative class members were not compensated for minimum wages." *Waters, supra,* at *10-11 ("Plaintiff's Complaint, likewise, sufficiently alleges minimum wage violations. Plaintiff identifies tasks for which he and class members were regularly not compensated, alleges that Defendant routinely rounded down Plaintiff and class members' time, and alleges Defendant had a practice or policy of not paying minimum wages.").

  **2. Cash-in-lieu of benefits, including "Health & Welf" cash payments under the SCA, must be included in the regular rate.**

Plaintiff alleges "Defendants paid Plaintiffs, and the class and collective members earned other forms of non-discretionary remuneration, including fringe benefit cash payments and shift differentials that Defendants failed to include in the overtime and

double time rates in the pay periods where they earned both." *See* SAC, at ¶¶ 47. Defendants argue that cash Health & Welfare benefit payments are properly <u>not</u> included in the regular rate calculation due to Service Contract Act regulations. This is incorrect.

Under the FLSA, overtime must be paid at a rate of not less than one and one-half times the employee's "regular rate of pay." 29 U.S.C. § 207(a)(1). Under 29 U.S.C. § 207(e), the "regular rate "shall be deemed to include all remuneration for employment" paid to an employee, unless one of the eight statutory exclusions set forth in 29 U.S.C. § 207(e)(1)-(8) apply. *See Flores v. City of San Gabriel*, 824 F.3d 895, 901 (9th Cir. 2016) (holding cash-in-lieu of benefits payments are not properly excluded from the [regular rate of pay overtime] calculation where "benefits [are paid] directly to its employees").

None of the eight statutory exclusions apply. Defendants do <u>not</u> argue their "Health & Welfare" payments are excludable under section 207(e)(4), which excludes payments made to a "trustee or third person pursuant to a *bona fide plan* for providing old-age, retirement, life accident, or health insurance or similar benefits for employees." 29 U.S.C. § 207 (e)(4) (emphasis added). Nor do they cite another statutory exclusion.

Instead, Defendants cite DOL guidance and the SCA. Defendants' exact argument that federal regulations (or the SCA) allow a non-statutory exclusion from federal overtime rate calculation has been squarely rejected before, including recently in this District. *See Oliverio-Still v. AVMAC,* Case No.: 24-cv-0870-L-DEB, 2025 U.S. Dist. LEXIS 37731, at. *8-9 (S.D. Cal. Mar. 3, 2025) ("On the plain terms of the SCA, 41 U.S.C. § 6707(e), fringe benefit payments made to employees in cash are not excluded because they are not excluded under the FLSA, 29 U.S.C. § 207(e). Accordingly, Defendant's argument rests entirely on DOL regulations 29 C.F.R. §§ 778.7 and 4.177(e), which are contrary to the statute they purport to interpret. *Cf.* 41 U.S.C. § 6707(e).") Moreover, as held in *AVMAC*, any contradictory DOL regulations do not control under recent Supreme Court precedent. *Id.* (citing *See Loper Bright Enterprises v. Raimondo,* 603 U.S. 369, 402-03 (2024); overruling *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984) ("ultimate interpretive authority"

no longer delegated to the agency". Defendant's argument is therefore rejected").

Indeed, Defendants fail to prove (and cannot establish at the pleadings stage) that the cash-in-lieu of benefit payments paid to Plaintiffs and the collective squarely fall in any of the enumerated exceptions under 29 U.S.C. § 207(e)(1)-(8). Defendants have not met their "burden of establishing that it qualifies under [an] exemption[,]" *Flores* 824 F.3d at 903, nor have Defendants established the "clear requirements" of the exemption in section 207(e)(4). *Id.* Defendants fail to raise any evidence (admissible via judicial notice at the 12(b)(6) stage of the proceedings) to support this defense (i.e., that one of the eight FLSA regular rate exemptions apply), but instead cites to 41 U.S.C. § 6706(e), 29 C.F.R. § 4.177(e), and 29 C.F.R. § 778.7.

The allegations throughout the SAC establish that the scope of the underpaid OT concerns the cash-in-lieu of benefits payments made directly to employees: "Further, Defendants paid Plaintiffs and the FLSA Collective cash benefits, cash in lieu of benefits, differentials, and other forms of remuneration that were not subject to exclusion from the regular rate of pay under the FLSA." SAC, ¶ 89. In *Flores*, the court found that unused, cash-out portions of health insurance premiums, or cash-in-lieu of benefits, must be included in the calculation of the employee's regular rate. The court had "no trouble" finding that these payments were not excludable under 29 U.S.C. § 207(e)(4) as the unused benefits were paid directly to its employees, not a trustee or third person. The fact relied on by Defendants, that the payments are made under the SCA, does not change this outcome, which is governed by 29 U.S.C. § 207(e)(1) to (8) and discussed in the Ninth Circuit's *Flores* decision. Indeed, the <u>plain statutory language of the SCA</u> (41 U.S.C. § 355) specifically contradicts Defendants' argument:

> "In determining any overtime pay to which such service employees are entitled under any Federal law, the regular or basic hourly rate of pay of such an employee **shall not include** any fringe benefit payments computed hereunder **which are excludable from the regular rate under the Fair Labor Standards Act** by provisions of section 7(d) [now (e)] (emphasis added)."

41 U.S.C. § 6707(e) is the same as 41 U.S.C. § 355 and, as held in *AVMAC*, is

Plaintiffs' Opposition to Defendants' Motion to Dismiss

"not ambiguous." *AVMAC,* supra, at *9.  In plains terms, both 41 U.S.C. § 355 and 41 U.S.C. § 6707(e) exclude only payments "which are excluded from the definition of 'regular rate' under section 7(e) of the Fair Labor Standards Act."

Certainly, Defendants' argument falls short when it is reduced the essential ultimate question in this case: *which FLSA exemption in 29 U.S.C § 207(e)(1) to (8) applies*? *Flores,* 824 F.3d at 902 ("[C]ash-in-lieu of benefits payments are not properly excluded from the calculation of the regular rate of pay"). None of the eight enumerated statutory exceptions apply to the "Health & Welf" cash in lieu of benefits payments Defendants paid its employees. It is not a close call. A Kansas district court decision, *Barnes v. Akal Security, Inc.,* 2005 WL 1459112, at *4 (D. Kan., June 20, 2005), provides direct supporting guidance holding "it is difficult to conceive any reasonable interpretation except that benefit payments are excluded under the SCA only insofar as they would be excluded under the FLSA." In *Barnes*, the Court rejected the argument that Defendant makes here: that SCA cash-in-lieu of benefits may be excluded from the regular rate. The *Barnes* court concluded:

> [The SCA] simply provides, however, that when overtime is calculated under that statute [Contract Work Hours and Safety Standards Act] for purposes of the employees covered by this bill, then it would omit from the regular rate of pay, the basic hourly wage rate, any of the fringe benefit payments of the types specified in the Fair Labor Standards Act as being omitted from the regular rate of pay for overtime purposes under the Fair Labor Standards Act.
>
> This is for the purpose of underlining and emphasizing the need for consistency in administration and in presentation of overtime under all of these statutes in a standard way, so that it would be easier for employers to understand, and easier for agencies to know about; and easier for the Department of Labor to administer.

(citing SCA of 1965: Hearing on H.R. 10238 Before the Special Subcomm. on Labor of the House Comm. on Edu. and Labor, 89th Cong. 8 (Aug. 5, 1965) (statement of Charles Donahue, Solicitor of Labor, Dept. of Labor.)

The *Barnes* court also notes that the U.S. Court of Appeals for the Fourth Circuit, "described section 355 as a 'provision restricting fringe benefit computation not allowed by the [FLSA.]'" *Masters v. Md. Mgmt. Co.,* 493 F. 2d 1329, 1332 . (4th Cir. 1974).  The

Plaintiffs' Opposition to Defendants' Motion to Dismiss

*Barnes* holding and reasoning then was followed in a 2011 case from the Western District of Texas, *Bonner*, 2011 WL 902252 (W.D. Tex., Mar. 15, 2011), which also held that cash-in-lieu of benefits payments do not receive special and different treatment under the FLSA. The court in *Bonner* found "[e]xceptions to the regular rate are narrowly construed, and the employer bears the burden of establishing any exception by clear and affirmative evidence. Payments under the Health Insurance Exception, § 7(e)(4), must be paid to a third person in order for the plan to be 'bona fide.'" *Bonner,* 2011 WL 902252, at \*5; *accord Barnes*, 2005 WL 1459112, (D. Kan., June 20, 2005). Defendants have failed to meet this burden.[3]

*Phelps*, the primary decision relied on by Defendants, and discussed in the footnote, is a wrongly decided outlier that fails to include the discussion of the relevant authorities addressed in *Bonner* or *Barnes* or *AVMAC*, and is inconsistent with Ninth Circuit precedent in *Flores*. Moreover, *Phelps* was based the principles of *Chevron* deference to a conflicting agency regulation - a doctrine struck down earlier this year by the Supreme Court recently in *Loper v. Raimondo* (holding "courts may not defer to an agency interpretation of the law simply because a statute is ambiguous; *Chevron* is overruled"). *Loper*, at 402-403. Moreover, a 2024 opinion from the Eleventh Circuit discussing the interplay of the FLSA and SCA further rejects Defendants' course of reasoning in this case. *See generally Perez v. OWL, Inc.*, 110 F.4th 1296 (11th Cir. 2024)

---

[3] Defendants' lone case in support of its purported SCA defense is *Phelps v. Parsons Technical Support, Inc.*, 2010 U.S. Dist. LEXIS 116197, at 7-8 (S.D. Ind., Oct. 29, 2010). However, this case is a wrongly decided outlier that does not mention what is undisputed: "[e]xceptions to the regular rate are narrowly construed, and the employer bears the burden of establishing any exception by clear and affirmative evidence." *See Barnes v. Akal Security, Inc.,* 2005 U.S. Dist. LEXIS 12268; (D. Kan., June 20, 2005). *Phelps* was decided based on a DOL interpretive regulation which states that "cash payments [that] discharge the employer's obligation to furnish . . . fringe benefits may be excluded pursuant to [the SCA] from the employee's regular or basic rate of pay in computing any overtime pay. . . ."). *See* 29 CFR § 4.177(e) and 29 C.F.R. Part 778. *Phelps* ignores the previously decided *Barnes* case, and instead seems to simply accept the employer's argument with minimal analysis.

Plaintiffs' Opposition to Defendants' Motion to Dismiss

(holding "the 'regular rate' under the FLSA [must] include the prevailing wage required by the SCA" and discussing how SCA wages must be included in the FLSA regular rate).

*Loreto v. Gen. Dynamics Info. Tech., Inc.,* 2021 WL 1839989, at *8* (S.D. Cal. May 7, 2021), cited by Defendants, is a preliminary approval order in a class action settlement involving the same SCA issue, but which predates *Loper* (overruling *Chevron* deference). Defendants' claim Judge Curiel noted that the DOL regulations provided a "meritorious defense" but the order actually says, "Defendant has a potentially meritorious defense," in his approval order for the settlement. This *dicta* does not stand for the proposition asserted by Defendants, predates *Loper*, and does not contain the a conclusion of the issue on a disputed basis, as in *AVMAC*, *Barnes*, and *Bonner*.

Here, Defendants improperly excluded these cash payments from Plaintiffs' and the collective members' regular rate of pay with respect to overtime in violations of the FLSA. A contrary decision would run afoul of *Flores* and longstanding Ninth Circuit and Supreme Court precedent that "an FLSA exemption will not be found 'except in contexts plainly and unmistakably within the given exemption's terms and spirit." *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (quoting *Arnold v. Ben Kanowsky* (1960) 361 U.S. 388 392 (SCOTUS holding "exemptions are to be narrowly construed against the employers seeking to assert them") (cleaned up).

This district, in *AVMAC*, recently addressed SCA cash health and welfare payments and agreed with all other cases, except *Phelps*, which fails to include the proper analysis. Accordingly, the motion to dismiss on this basis should be denied.

       **i.**      **The California state law claims for regular rate OT also remain.**

Defendants' motion argues the California state law claim (fourth cause of action) should be dismissed as well, based on the SCA argument addressed above. Defendants cite no law to suggest the state claim would be subject to the federal DOL regulation, nor do they provide California state law authority to suggest there is a state regulation or statute that exempts cash-in-lieu of benefits from the regular rate. In any event, the federal regulation-based argument fails for the federal claims and equally fails for the

Plaintiffs' Opposition to Defendants' Motion to Dismiss

state law claims.  Accordingly, the Court should deny the motion as to the fourth state law overtime cause of action with the first cause of action for federal overtime.  *See generally Ferra v. Loews Hollywood Hotel, LLC,* 11 Cal. 5th 858 (2021) (California Supreme Court case discussing how overtime under Cal. Lab. Code sec. 510 must be paid at the regular rate, inclusive of all remuneration).

### ii.    The regular rate is not improperly calculated in the SAC.

Defendants' last argument on this subject is that the regular rate accounted for shift differentials.  SAC, ¶ 48.  However, Defendants' math omits the $365.60 cash in lieu of benefits payment from the calculation.  Since that amount must be included in the overtime calculation, this argument fails.

### E.    Plaintiffs' fifth and sixth claims state legally cognizable claims.

Plaintiffs' meal and rest violation claims are sufficiently pled and must survive this motion because Plaintiffs clearly allege Defendants engaged in the unlawful "policy and practice of automatically deducting an unpaid 30-minute meal period regardless of their ability to take one." *See* SAC, at ¶ ¶ 42, 54, 99.  Defendants essentially make the same arguments for this cause of action as they do with respect to the *Landers* arguments.

Plaintiff Miranda identifies when he suffered a meal violation when he "recalls being instructed to change his entry from 'False' to 'True' when asked if he took a meal break when in reality, he did not[,]" and "Plaintiff Miranda was told that management would not submit his time entry if he didn't select 'True'." *Id.* at ¶ 59. Plaintiffs allege multiple instances where "Defendants failed to provide all rest periods," when "Plaintiffs and the [class members] were hardly ever relieved of their job duties because supervisors did not want to sit in the pods while employees were on break." SAC, at ¶ 60. As mentioned above, Plaintiffs are not required to allege a specific day or workweek such violations occurred so long as they plead facts "demonstrating that there was at least one workweek" in which the wage-and-hour laws were violated. *Waters*, *supra*, at *8-9 (quoting *Perez*, *supra*, *2-3); *see also Valenzuela v. Everi Games Inc.,* 2024 U.S. Dist. LEXIS 126330, at *11 (C.D. Cal. July 17, 2024) (denying defendant's motion to dismiss

plaintiff's complaint where "[t]he SAC alleges that … [defendant] would auto-deduct 30 minutes to reflect a meal period whether or not an employee had 'clocked-out' on their UKG App or whether a meal break was actually taken."); *See also Cook v. Matrix Absence Mgmt.*, 737 F. Supp. 3d 885, 890 (N.D. Cal. 2024) (denying defendant's motion to dismiss break claims because plaintiff "asserts that *she* was not given required meal and rest breaks and explains why she did not receive these breaks").[4]

**F.     Plaintiffs have a private right of action to seek wages, including sick pay, and thus the seventh cause of action should remain.**

Defendants rely on the general principle that legislation should be interpreted to not include a private right of action unless the statute, or the legislative history indicates that the legislature intended a private right of action. Defendants cite three cases adopting the reasoning that there is no private right of action for paid sick leave. *See* ECF# 23-1, pp. 17-18. However, these cases do not control the Court's inquiry as to whether or not Plaintiff can sue for unpaid (or underpaid) sick pay wages, as the Labor Code is clear that a private right of action for unpaid wages exists. In other words, when an employer fails to pay *wages* to employees, the employees simply have a right to sue to recover them, unless the law expressly states otherwise, as the Labor Code creates or assumes a private right of action for wages. *See* Labor Code §§ 218.5, 218.6, 1194, *etc.*

***Sick pay may be recovered as unpaid wages:*** Labor Code § 200 broadly defines wages as: "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Sick pay, according to California law pursuant to Labor Code section 200, constitutes wages. *Dept. of Ind. Relations v. UI Video Stores, Inc.,* 55 Cal.App.4th 1084, 1091 (1997); *see also Murphy v. Kenneth Cole Prod.,* 40 Cal.4th 1094, 1103 (2007) ("Courts have recognized that 'wages' also include those benefits to

---

[4] It should be noted, Defendants refused to provide Plaintiffs with their time records (*see* twelfth cause of action, SAC, ¶ 151), so they do not even have the ability to refer to time records they are legally entitled to when formulating their complaint. *Landers*, Rule 8, and *Twombly/Iqbal* do not impose an unreasonable memory test on claimants, but rather require alleged facts underlying the claim, which are stated here.

which an employee is entitled as a part of his or her compensation, including money, room, board, clothing, vacation pay, and ***sick pay***") (emphasis added).

Labor Code § 200's plain language is interpreted to include any item of compensation that financially benefits an employee in exchange for work, or as a necessary part of the employment relationship.[5]   Like missed rest and meal period premium wages, sick pay is a payment denominated in hourly wage rates, mandated by the law, for the benefit of employees, and is wage earned based on hours of worked performed. Indeed, akin to vacation pay under California law (which the California Supreme Court has long recognized as a wage for purposes of California wage and hour law—*see Suastez v. Plastic Dress Up*, 31 Cal.3d 774 (1982) and the cases that follow— employees accrue sick pay based on hours of work performed for the employer. *See* Labor Code § 246 *et seq*.

***Plaintiffs do not rely on the special powers granted to the Labor Commissioner in Labor Code § 248.5(e):*** Defendants cite the provision of the which provides for broad authority to the Labor Commission or the Attorney General to bring a civil action to enforce the provisions of the law, to argue that because the Code provides this authority to the state explicitly, no private right of action exists. *See* Labor Code § 248.5(e).  This is a red herring. Plaintiffs do not seek these remedies and do not rely on this section. Plaintiffs seek wages they and putative class members are due under the Code. These provisions govern the Labor Commissioner's powers, not those of private individuals

---

[5] *See Ware v Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 24 Cal App 3d 35, 44-45 (1972) (profit sharing plan was wages); *In Re Work Uniform Cases*, 133 Cal App 4th 328, 338 (2005); *Espejo v The Copley Press*, 13 Cal App 5th 329, 367 (2017) (certain expense reimbursements may constitute wages).   "Courts have recognized that 'wages' also include those benefits to which an employee is entitled as a part of his or her compensation, including … sick pay." *Murphy*, 40 Cal.4th at 1103. Additionally, the Supreme Court of California ruled that mandated payments to workers, meant to compensate or benefit workers (even if it is also meant to punish or deter illegal employer actions) are wages. *See Naranjo v Spectrum Security Services,* 13 Cal 5th 93 (2022) (premiums for meal and rest period paid under Labor Codes section 226.7 are wages); *see also Murphy,* 40 Cal 4th at 1109

Plaintiffs' Opposition to Defendants' Motion to Dismiss

bringing legal action in civil court. *See* Labor Code § 245(b).  The opening provision of the HWHFA states: "The provisions of this article . . . ***do not . . . negate any other legal rights, remedies, or procedures available to an aggrieved person***."

By its plain terms, the law does not limit an employee's ability to seek unpaid wages, which is endemic to the Labor Code. Many provisions of the Labor Code, including Labor Code sec. 2802, do not expressly provide for a private right of action, but that does not thwart the ability to seek redress through civil actions for wages owed.

**G.    Plaintiffs' so-called "derivative claims", in the tenth through thirteenth causes of action, adequately state a claim.**

Defendants argue that the eighth through tenth and thirteenth claims for untimely payment of wages, wage statement violations, waiting time penalties, and UCL claims predicated on the underlying wage claims, respectively, must fail if the underlying wage claims are dismissed.  Each of these claims is not purely derivative and should be addressed on their own merits.  For instance, the wage statement claim contains an independent facial wage statement allegation that is independent of the underlying wage claims (SAC ¶¶ 63-69), and the UCL seeks relief not available under the underlying Labor Code provisions, in addition to a fourth year of liability.  Because these claims are not wholly derivative as Defendants suggest, Defendants' motion should be denied to this point. If the underlying wage claims are deemed improperly pled, Plaintiffs respectfully leave to amend to cure any pleading deficiencies.

**H.    Plaintiffs' claim for Section 204 violations is a valid claim.**

Plaintiffs' eighth cause of action for Untimely Payment of Wages under Labor Code §§ 204, 210, and 218 alleges Defendants failed to pay all wages on time each pay period in the manner required by Labor Code §§ 204.  As a result, Plaintiff and class members seek to recover the statutory penalty set forth in Labor Code § 210 ($100 for the initial / $200 for subsequent violation, plus 25% of the wage amounts). Defendants' motion should be denied because Labor Code § 210(c) (as amended in 2019) and Labor Code § 218 authorize Plaintiff's cause of action under Labor Code § 204.

Plaintiffs' Opposition to Defendants' Motion to Dismiss

Defendants argue Sec. 204 regulates only the *timing* of wage payments rather than create a substantive right to penalties. Defendants cite various cases to argue that this section is only concerned with the frequency and timing of wage payments, not the timely payment of all wages. (MTD, Doc. 14, pp. 16-17.) But the plain language of Labor Code § 204 compels a contrary conclusion: "[A]ll wages … earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as regular paydays." Cal. Lab Code § 204(a). The Eastern District, in *Rodriguez v. Taco Bell Corp.*, provides a straightforward analysis regarding the sufficiency of "derivative" Labor Code section 204 claims. 2013 WL 5877788 (E.D. Cal. Oct. 30, 2013). There, the court reviewed the plain language of the statute and held "the plain text of the statute is inconsistent with Defendant's contention that Section 204 is satisfied if an employer pays its employees some, but not all, of the wages owed on a semimonthly basis." *Id.* at *7. "An employee is entitled to the additional hour of pay under section 226.7 immediately upon being forced to miss a rest or meal period. Section 204 requires such wages be paid on a semi-monthly basis. Since Plaintiff alleges that Defendant failed to timely pay such wages, Plaintiff has alleged a cognizable claim under Section 204." *Id.* Just as in *Rodriguez*, Plaintiffs' SAC alleges that Defendants willfully failed to timely pay all wages, including paid sick leave and meal and rest premiums.

Defendants' cited cases cannot explain this distinction between the plain language of Labor Code § 204's mandate and the cases that adopt an alternative (mis)reading of the statute. Indeed, pursuant to this eighth cause of action, Labor Code § 210 provides for statutory penalties based on failure to comply with Section 204. The language of the statute is inconsistent with the district courts that limit the application of Section 204.

I.      **The ninth claim for wage statement violations includes detailed allegations and states a cognizable injury.**

Defendants argue Plaintiffs fail to state adequate facts to support a Labor Code § 226 violation and further fail to state a cognizable injury.

First, Defendants refer the Court to paras. 134-138, the cause of action section of the SAC, but ignore the factual allegations set forth in paras. 66-69 (or other parts of the

Plaintiffs' Opposition to Defendants' Motion to Dismiss

SAC that include allegations about deficient wage rates).  Paras. 66-69, specifically, lay out, with an illustrative example, how Defendants failed to list the hourly rates or hours in effect for the Health & Welfare payments on the paystubs, which only list a lump sum payment for the health & welfare payments without showing hours or the hourly rate at which the Health & Welfare cash payments were earned.  Additionally, para. 69 states that the wage statements fail to account for the hours worked that were uncompensated and fail to list total hours.  This is a specific violation of Lab. Code § 226(a)(1)-(9).

Next, with respect to a cognizable injury, the SAC alleges that Defendants practices with respect to wage statements caused confusion and concealed wage and premium underpayments. *See* SAC, 137.  This injury here is akin to that discussed in *McGowan v. McLane Co.*, No. 5:24-cv-00689-JLS-MAR, 2025 U.S. Dist. LEXIS 83632, at *13-14 (C.D. Cal. Mar. 3, 2025).[6]  The SAC, as a whole, establishes and alleges a pattern and practice of noncompliance with wages and wage rates, and the wage statement allegations define a wage statement violation in Defendants' inclusion of the gross total SCA payment, without properly itemizing the hours or rate at which it was paid.  Through this practice, the inaccuracy precluded employees from promptly and easily determining the amount of wages paid and owed, sowed confusion, and concealed the underpayments.  To the extent Plaintiffs' admittedly concise allegation on the injury is presently insufficient, Plaintiffs respectfully request leave to add the facts necessary to state this more completely in the operative complaint.

---

[6] "To be sure, an employee may suffer a cognizable injury from an inaccuracy in any of the required information under Section 226(a) if the employee cannot "promptly and easily determine from the wage statement alone ... the amount of the gross wages paid to the employee during the pay period." Cal. Labor Code § 226(e)(2)(B); see *Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1181 (C.D. Cal. 2008), aff'd, 368 F. App'x 761 (9th Cir. 2010) (collecting cases that found an adequately pled injury for purposes of § 226(a) where the "injuries included the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked."

Plaintiffs' Opposition to Defendants' Motion to Dismiss

**J.      The tenth claim for waiting time penalties states sufficient facts.**

Plaintiff Carroll, a former employee, specifically alleged when his employment ended as well as the various ways in which he and other class members were underpaid, in support for his claim for waiting time penalties under Labor Code § 203. SAC, ¶¶ 13, 75, 139-142.  Defendants argue Plaintiff has failed to plead sufficient facts to survive a motion to dismiss challenge on this claim.

However, as held by courts in this district, at the pleading stage, "the standard for "willful" action by an employer in the context of Section 203 is not high…" *Powell v. Walmart Inc.*, 2021 WL 369550, at *3 (S.D. Cal. Feb. 3, 2021); *see also Varsam v. Lab. Corp. of America,* 120 F. Supp. 3d 1173, 1179 (S.D. Cal. 2015) (finding plaintiff sufficiently pled willfulness under Labor Code section 203 by stating the defendant "willfully failed to pay" various types of wages and alleging a "regular practice" of off the clock work and the failure to pay meal and rest premiums). District courts have found that complaints with less detail than Plaintiffs' SAC contain sufficient factual allegations to overcome a motion to dismiss. *See Alabsi v. Savoya, LLC*, 2019 WL 1332191, at *18 (N.D. Cal. Mar. 25, 2019) (denying Defendant's motion to dismiss because "Plaintiff has sufficiently pled the waiting time claim by asserting that he was not paid his minimum wage, overtime wages, meal and rest premiums, and business expenses after leaving Defendant's employment."); *Mie Yang v. Francesca's Collections, Inc.,* 2018 WL 984637, at *5 (N.D. Cal. Feb. 20, 2018) (denying a motion to dismiss waiting time penalty claim where the plaintiff stated her last day of employment and alleged that she was not compensated for "unpaid overtime" at the time her employment ended).

Plaintiff's willfulness allegations are further bolstered by allegations in para. 67 of the SAC, which reference the prior lawsuits and settlements Defendants have faced (which are on file through a declaration and request for judicial notice supporting Defendants' motion), and which Plaintiffs allege as evidence of a continued pattern of noncompliance with California's wage and hour laws.  Defendants' reference to the "good faith dispute" defense to waiting time penalties, citing *Hill v. Walmart, Inc.*, 32

Plaintiffs' Opposition to Defendants' Motion to Dismiss

F.4th 811, 816–17 (9th Cir. 2022), is an affirmative defense Defendants must allege in its answer (and prove at trial or on summary judgment), and has no bearing on Plaintiff's pleading, which has sufficient alleged a willful failure to pay all wages owed.

**K.      Plaintiff pleads a valid 12ᵗʰ claim for failure to provide time records.**

This claim seeks a statutory penalty under Labor Code § 226(b) for Defendants' failure to provide time records to Plaintiff Miranda in response to his statutory records request under Labor Code § 226(b) and Section 7 (Records) of the IWC Wage Orders. In relevant part, Section 226(b) grants employees the right to receive "a copy of records pertaining to their employment" and Section 7 of the IWC Wage Orders requires employers to keep records of time records showing clock in and out times, and states "employee[] records shall be available for inspection by the employee upon reasonable request." Time records are certainly "records pertaining to employment", and the Wage Orders clarify that these records must be maintained and made available for inspection. The SAC adequately alleges that Defendants failed to provide time records to Plaintiff Miranda in response to his records request. SAC, ¶ 151. Defendants cite no authority to refute the plain language of this statute, nor do Defendants reject that time records are employment records within the meaning of the statute.[7]

**L.      The thirteenth cause of action under the UCL is adequately stated and seeks restitution for claims of which there is no adequate legal remedy.**

Plaintiffs do not seek to enforce wage statement or waiting time claims under the UCL. Plaintiffs seek to recover under the UCL restitution for claims on which they lack an adequate remedy at law. For instance, should the Court dismiss Plaintiffs' sick pay claim (seventh cause of action), these sick pay wages are recoverable as restitution under

---

[7] *Magallon v. Cedars-Sinai Med. Ctr.*, Los Angeles Cty. Sup. Ct., No. 19STCV13442, 2020 Cal. Super. LEXIS 52468, *5 (July 8, 2020) ("[t]he "records" referred to in subdivsion (b) are not limited to the wage statement described in subdivsion (a). If the Legislature had intended to limit application of subdivision (b) to the wage statement referenced in subdivision (a), it could have done so, but it instead used the different and broader term 'records pertaining to their employment.' Therefore, the court finds that Labor Code section 226, subdivision (b) requires production of time records and employee handbooks pertaining to the employee's employment."

Plaintiffs' Opposition to Defendants' Motion to Dismiss

the UCL, as a plaintiff can allege a UCL claim in the alternative to a statutory claim made on the same grounds at the pleading stage. See *Franckowiak v. Scenario Cockram USA, Inc.*, 2020 WL 9071697, at *3 (C.D. Cal. Nov. 30, 2020); *Rudolph v. Herc Rentals Inc.*, 2021 WL 5994514, at *4 (C.D. Cal. Aug. 27, 2021).

Moreover, the statute of limitations for Plaintiffs' wage claims is three years under California law, and the UCL provides a fourth year of recovery of these wages as restitution, a period of time in which there is no adequate legal remedy provided under the Labor Code.  As stated in the SAC, at ¶ 159: "Plaintiffs do not have an adequate remedy at law without the UCL [] restitution sought herein, including the fact that the recovery sought does not extend to the four-year limitation provided under the UCL or to the extent the underlying Labor Code and IWC Wage Order violations do not provide a private right of action."  Without the UCL claim, which affords employees in California a fourth year of liability recovery as restitution of earned wages, Plaintiff would be limited to only 3 years of potential recovery, rendering violations in that fourth year without an adequate remedy.[8]  The Southern District in *Rivera* cited *Goldstein* to note that the Court's conclusion in the *Rivera* action was in conformity with *Eason v. Roman Catholic Bishop*, 414 F.Supp.3d 1276, 1282 (S.D. Cal. 2019) and "the prevailing view within the [S.D. Ca.l]": "Consistent with this District's recent analyses on the matter, the Court finds that plaintiffs may plead a UCL claim as an alternate remedy predicated on the same underlying facts as a separate claim for damages." *Rivera, supra,* at 10.

## IV.   CONCLUSION

Plaintiffs respectfully request the Court deny Defendants' motion in its entirety. Should the Court grant the motion in part, Plaintiffs respectfully request the order authorize leave to amend considering this is the first pleading challenge filed by Defendants.

---

[8] *Rivera v. Jeld-Wen Inc.*, 2022 U.S. Dist. LEXIS 142129, 21-CV-01816-AJB-AHG (S.D. Cal. Aug., 9, 2022); *see also Goldstein v. Gen. Motors LLC*, 517 F.Supp.3d 1076, 1088 (S.D. Cal. 2021); *Eason v. Roman Catholic Bishop of San Diego*, 414 F.Supp.3d 1276, 1282 (S.D. Cal. 2019).

Plaintiffs' Opposition to Defendants' Motion to Dismiss

Respectfully submitted,

Dated: May 16, 2025               ***Ferraro Vega Employment Lawyers, Inc.***


                                  */s/ Nicholas J. Ferraro*
                                  Nicholas J. Ferraro
                                  *Attorney for Plaintiffs*

Plaintiffs' Opposition to Defendants' Motion to Dismiss