UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DAVID VICTOR MIRANDA; VEON
CARROLL, *individually and on behalf of
all others similarly situated*,

Plaintiffs,

v.

CENTERRA SERVICES
INTERNATIONAL, INC.; CENTERRA
GROUP, LLC; CONSTELLIS, LLC,

Defendants.

Case No. 24-cv-02340-BAS-MMP

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS (ECF No. 23)**

Plaintiffs David Miranda and Veon Carroll bring this putative class and collective action arising out of their employment with Defendants Centerra Services International, Inc. ("Centerra Services"); Centerra Group, LLC ("Centerra Group"); and Constellis, LLC. Plaintiffs allege Defendants violated various wage and hour laws. (Second Am. Compl. ("SAC") ¶¶ 84–161, ECF No. 18.)  Defendants move to dismiss Plaintiffs' Second Amended Complaint for lack of personal jurisdiction and for failure to state a claim. (Mot., ECF No. 23.)  Plaintiffs oppose. (Opp'n, ECF No. 24.)

The Court finds the motion suitable for determination on the papers submitted and without oral argument.  Fed. R. Civ. P. 78(b); CivLR 7.1(d)(1).  For the reasons set forth

24cv2340

below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.

## BACKGROUND

Plaintiffs worked as armed guards in San Diego County as employees of Defendants. (SAC ¶¶ 14–15.)  Plaintiffs were staffed at locations used by U.S. Customs and Border Protection.  (*See id.* ¶¶ 21, 71.)  David Miranda has worked as a non-exempt employee of Defendants since April 2024.  (*Id.* ¶ 12.)  Veon Carroll, a former employee, worked for Defendants as a non-exempt employee from about July 2023 to September 2024.  (*Id.* ¶ 13.) Plaintiffs allege Defendants violated the Fair Labor Standards Act ("FLSA"), various provisions of the California Labor Code, and California's Unfair Competition Law ("UCL").  (*Id.* ¶¶ 84–161.)  Specifically, Plaintiffs assert thirteen causes of action:

(1)    failure to pay all overtime wages (FLSA, 29 U.S.C. § 201 et seq.);

(2)    failure to pay for all hours worked (FLSA, 29 U.S.C. § 201 et seq.);

(3)    minimum wage violations (Cal. Lab. Code §§ 1194, 1194.2, 1197);

(4)    failure to pay all overtime wages (Cal. Lab. Code §§ 510, 1194);

(5)    meal period violations (Cal. Lab. Code § 226.7);

(6)    rest period violations (Cal. Lab. Code § 226.7);

(7)    paid sick leave violations (Cal. Lab. Code § 246);

(8)    untimely payment of wages (Cal. Lab. Code § 204);

(9)    wage statement violations (Cal. Lab. Code § 226);

(10)    waiting time penalties (Cal. Lab. Code § 203);

(11)    failure to reimburse business expenses (Cal. Lab. Code § 2802);

(12)    failure to provide records (Cal. Lab. Code § 226); and

(13)    unfair and unlawful business practices in violation of the UCL (Cal. Bus. & Prof. Code § 17200).

(*Id.*)

Plaintiffs bring these claims individually and on behalf of all others similarly situated.  (SAC ¶¶ 29, 77.)  Defendants now move to dismiss any non-California collective

24cv2340

action claims under Rule 12(b)(2).  Defendants also challenge twelve of the thirteen causes of action under Rule 12(b)(6).

## PERSONAL JURISDICTION

### I.    Legal Standard

When raised as a defense by motion, Rule 12(b)(2) authorizes the dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  In this circumstance, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Will Co. v. Lee*, 47 F.4th 917, 921 (9th Cir. 2022).  When the defendant's motion is based on written materials, and no evidentiary hearing is held, the court evaluates only whether the plaintiff demonstrates a prima facie showing of personal jurisdiction based on the plaintiff's pleadings and affidavits.  *Id*.  The court must take unchallenged allegations in the complaint as true, and conflicts between the parties over statements within any affidavits must be resolved in favor of the plaintiff.  *Id*.

The general rule provides that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  For due process to be satisfied, a defendant must have "minimum contacts" within the forum state such that asserting jurisdiction over the defendant would not "offend traditional notions of fair play and substantial justice."  *Id.* at 1155 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)).  Both California and federal long-arm statutes require compliance with due process requirements.  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).

There are two types of personal jurisdiction: general and specific.  *Id.* at 118.  General jurisdiction allows a court to hear cases unrelated to the defendant's forum activities and exists if the defendant has "substantial" or "continuous and systematic" contacts with the forum state. *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986) (citing *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986)).  Specific jurisdiction permits the court to exercise jurisdiction

24cv2340

over a defendant who has availed itself through forum-related activities that gave rise to the action before the court. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

## II. Analysis

Defendants argue that the Court lacks personal jurisdiction over Plaintiffs' FLSA collective action for any out-of-state plaintiffs based on conduct that occurred outside of California. (Mot. 3:25–7:10.)

At the time Defendants filed their Motion to Dismiss, a district court had certified an interlocutory appeal regarding Defendants' personal jurisdiction argument. *See Harrington v. Cracker Barrel Old Country Store Inc.*, 713 F. Supp. 3d 568, 585 (D. Ariz. 2024). Defendants noted this forthcoming ruling in their Motion. (Mot. 5:3–6.) Defendants also argued that pursuant to *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017), the Court must dismiss the Second Amended Complaint insofar as it pursues a collective action on behalf of individuals who do not reside in California, as well as for conduct occurring outside of California. (Mot. 4:1–5.)

In *Bristol-Myers*, the Supreme Court held that California courts lack specific jurisdiction "to entertain [ ] nonresidents' claims" in a mass action brought under California law by California residents and nonresidents. 582 U.S. at 265. The Court reasoned that "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Id.* at 264 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). When there is no connection, specific jurisdiction is lacking. *Id.* The Court emphasized that all conduct giving rise to the nonresident claims occurred outside the forum state. *Id.* at 264–65. Therefore, California courts could not assert specific jurisdiction. *Id.* at 265.

After the Motion was briefed, Defendants submitted a Notice of Recently Decided Authority, advising the Court that the Ninth Circuit had issued its decision. (ECF No. 27.) In *Harrington v. Cracker Barrel*, the Ninth Circuit held that the *Bristol-Myers* personal

24cv2340

jurisdiction framework applies to FLSA collective actions.  142 F.4th 678, 687 (9th Cir. 2025).

The Ninth Circuit based its decision on two key principles.  *Id.* at 685.  First, it recognized that FLSA does not contain a service of process provision.  *Id.* at 686.  The Ninth Circuit found this notable because Congress's traditional method for authorizing personal jurisdiction is through a service of process provision; meaning, without one, courts must instead apply the long-arm statute of the forum state.  *Id.*; *see also* Fed. R. Civ. P. 4(k)(1)(A).

Second, the Ninth Circuit emphasized that, unlike a traditional class action, an FLSA collective action is more accurately characterized as a mass action in which aggrieved workers pursue individual claims collectively.  142 F.4th at 686 (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018)).  Thus, personal jurisdiction must be analyzed on an individualized basis rather than at the level of the collective suit.  *Id.*  Accordingly, the Ninth Circuit applied the *Bristol-Myers* rule, which requires each claim to bear a connection to the defendant's contacts with the forum state.  *Id.* at 687.

Here, Plaintiffs rely on specific jurisdiction in pursuit of this FLSA collective action in California.  They have neither asserted nor alleged that general jurisdiction exists over Defendants.  Further, Plaintiffs' federal wage and hour claims rely on conduct that Defendants allegedly engaged in within the State of California.  (*See* SAC ¶¶ 11–13, 20– 21, 24.)  Defendants' conduct in California is sufficient for the Court to exercise specific jurisdiction over any California plaintiffs, but the same cannot be said for any nonresidents' claims involving conduct outside of the forum.  *See Bristol-Myers*, 582 U.S. at 265.  Thus, the Court agrees with Defendants' argument in light of *Bristol-Myers* and *Harrington*.

Nevertheless, Plaintiffs argue this issue "is not ripe because no notice has gone out to employees and because there are no out-of-state opt-ins at this time."  (ECF No. 30.) The Court acknowledges that Plaintiffs have yet to seek pre-certification of a collective action.  However, as a general rule, if a party does not raise personal jurisdiction at the pleadings stage, the party waives the right to raise personal jurisdiction later.  *See* Fed. R.

- 5 -

Civ. P. 12(h)(1); *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705 (1982) ("Thus, the failure to enter a timely objection to personal jurisdiction constitutes, under Rule 12(h)(1), a waiver of the objection."). Defendants have appropriately raised this issue in a Rule 12(b)(2) motion, and Plaintiffs have failed to meet their burden in response to the Motion to Dismiss. *See Will Co.*, 47 F.4th at 921. Plaintiffs fail to set forth any facts that would support a prima facie case of personal jurisdiction over claims brought by FLSA plaintiffs who neither lived in nor worked in California.

Accordingly, the Court grants Defendants' Motion to Dismiss. The Court dismisses without prejudice any FLSA claims brought by out-of-state plaintiffs for conduct occurring outside of California.

## FAILURE TO STATE A CLAIM

### I.   Legal Standard

Under Rule 12(b)(6), the court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In evaluating a motion to dismiss, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters . . . [subject to] judicial notice."[1]

---

[1]   Defendants request that the Court take judicial notice of: (1) the January 25, 2024, Final Approval of the Class and Collective Action settlement entered in the matter of *Hines v. Constellis Integrated Risk Management Services*, Los Angeles Superior Court Case No. 20STCV26962; and (2) the

24cv2340

*UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (quoting *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).  A court may also dismiss a complaint when its allegations "give rise to an affirmative defense that clearly appears on the face of the pleading." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022).

## II.    Analysis

Defendants' Rule 12(b)(6) motion is double-tracked.  One set of arguments addresses all of Plaintiffs' claims; the other set assails a dozen of them on an individualized basis.  The Court starts with Defendants' challenge to Plaintiffs' "information and belief" allegations, as well as Plaintiffs' contention that all three Defendants employed them, before turning to each cause of action.

### A.    Allegations Made on "Information and Belief"

At the threshold, Defendants argue that Plaintiffs fail to state a claim for relief because many of their allegations are made "upon information and belief."  (Mot. 7:25–8:19.)  This argument is unpersuasive.  Rule 11(b)(3) permits allegations made on information and belief, provided they are identified, and there is a reasonable likelihood that evidentiary support will emerge after an opportunity for investigation and discovery.  Fed. R. Civ. P. 11(b)(3).  Moreover, Plaintiffs do not allege fraud or mistake, which would

---

October 9, 2024, Joint Notice of Settlement in the matter of *Montenegro v. Constellis Integrated Risk Management Services*, San Diego Superior Court Case No. 37-2024-00011032.  (Defs.' Req. for Jud. Notice 2, ECF No. 23-3.)

However, upon review, the first document does not match Defendants' description.  (*See* McKenzie-Veal Decl. Ex. 1, ECF No. 23-2.)  The referenced Exhibit 1 is a court order from a federal case—*Hines v. Constellis Integrated Risk Management Services*, No. 2:20-cv-06782 JWH-PLAx, 2021 WL 4432833 (C.D. Cal. Aug. 24, 2021)—not a settlement order from the Los Angeles Superior Court.  (*Id.*)  Regardless, the Court declines to take judicial notice of these documents, finding them unnecessary to resolve the instant motion.  *See Ecological Rts. Found. v. PacifiCorp*, 738 F. Supp. 3d 1239, 1248 (N.D. Cal. 2024) (denying request for judicial notice of documents the court did not consider in deciding the motion); *see also Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1039 (N.D. Cal. 2017) (same).

trigger the heightened pleading standard of Rule 9(b). *See id.* 9(b). Rather, they assert various wage and hour violations, which are governed by the general notice pleading standard under Rule 8—along with the Supreme Court's guidance on that standard. *See id.* 8(a); *Iqbal*, 556 U.S. at 677–78.

Neither *Twombly* nor *Iqbal* bars Plaintiffs from pleading facts based on "information and belief" where either the facts are "within the possession and control of the defendant," or where the belief is "based on factual information that makes the inference of culpability plausible." *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). However, such allegations must still be supported by sufficient factual content to render the claim plausible. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In determining whether such plausibility exists, courts must "draw on [their] judicial experience and common sense." *Id.* at 679. Courts routinely reject conclusory allegations made on information and belief that lack any factual underpinning. *See, e.g.*, *Twombly*, 550 U.S. at 551, 557 (declining to credit a bare allegation "upon information and belief" of conspiracy).

Here, although Plaintiffs make certain allegations on information and belief regarding the employees of Defendants Centerra Group and Constellis, the Complaint also includes various factual allegations regarding Defendants' alleged wage and hour violations. (*See* SAC ¶¶ 21(a)–(m), 43, 47–48, 53, 61, 68, 71.) Plaintiffs correctly note that Defendants' argument, in effect, asks the Court to accept a categorical rule that rejects "information and belief" statements. (Opp'n 7:1–13.) To the extent Defendants challenge the sufficiency of the factual basis for those allegations, such a challenge is appropriately resolved under the plausibility standard, applied on a claim-by-claim basis. Accordingly, the Court will evaluate each of Plaintiffs' claims individually, rather than dismiss them wholesale based on Defendants' generalized objection to the allegations made on information and belief.

24cv2340

**B.    Claims Against Centerra Group and Constellis**

Defendants' other global challenge to Plaintiffs' claims has more merit.  Defendants do not contest that Defendant Centerra Services employed Plaintiffs.  (Mot. 1:21–23.)  However, Defendants seek dismissal of the other two Defendants—Centerra Group and Constellis—arguing that the Complaint fails to plausibly allege these two entities employed Plaintiffs.  (*Id.* 8:20–12:4.)

Plaintiffs' claims cannot proceed under state or federal law unless an employment relationship exists, but both jurisdictions recognize that multiple entities may jointly employ someone and be subject to the labor laws.  *See Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983); *Gonzalez v. Nowhere Beverly Hills LLC*, 107 Cal. App. 5th 111, 122–23 (2024).   And although California occasionally looks to regulations under FLSA for guidance, the state's standard for determining employment status remains distinct.  *Martinez v. Combs*, 49 Cal. 4th 35, 68 (2010); *see also See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 903 (2012).  The Court thus must address both jurisdictions' standards to resolve Defendants' challenge to Plaintiffs' multiple employer allegations.

In doing so, the Court starts by reviewing the joint employer doctrine under both state and federal law.  The Court then turns to the other theories advanced by Plaintiffs: the integrated enterprise and alter ego doctrines.  Finally, the Court summarizes Plaintiffs' multiple employer allegations and determines whether Plaintiffs allege sufficient facts to support a plausible inference that Centerra Group and Constellis employed them.

**1.    Multiple Employer Doctrines**

**i.    Joint Employer**

**a.    Federal**

A defendant must be an "employer" to be liable under the FLSA.  *Bonnette*, 704 F.2d at 1470.  Two or more employers may be joint employers under the FLSA.  *Id.* at 1469; *see also* 29 C.F.R. § 825.106.  The Ninth Circuit applies a four-factor "economic reality" test to determine the existence of an employer-employee relationship.  *Bonnette*,

704 F.2d at 1469; *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997). Under this test, courts consider whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette*, 704 F.2d at 1470; *see also Moreau v. Air France*, 356 F.3d 942, 946–47 (9th Cir. 2004) (listing the *Bonnette* factors while identifying other potentially relevant considerations for the analysis).

### b.     California

Under California law, "[a]n employment relationship must exist in order for the California wage orders or the provisions of the Labor Code governing wages . . . to be applicable." *Post v. Palo/Haklar & Assocs.*, 23 Cal. 4th 942, 947 (2000); *see also Martinez*, 49 Cal. 4th at 49 ("That only an employer can be liable, however, seems logically inevitable as no generally applicable rule of law imposes on anyone other than an employer a duty to pay wages."). California courts have adopted the California Industrial Welfare Commission's ("IWC") definition of employer, which applies to California Labor Code violations. *Martinez*, 49 Cal. 4th at 62. The IWC definition of "employer" must be interpreted according to its own terms without regard to the FLSA. *Id.* at 66–67 (expressly rejecting FLSA's "economic reality" test). Under the IWC's standard, to employ "has three alternative definitions." *Id.* at 64. It means: (a) to exercise control over the wages, hours, or working conditions, (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship. *Id.*

### 1.     Control over Wages, Hours, or Working Conditions

Under the first definition, an entity employs workers if it "directly or indirectly, or through an agent or any other person, employs or exercises control" over employees' "wages, hours, or working conditions." Cal. IWC Wage Order No. 4-2001 § 2(I), Cal. Code Regs. tit. 8, § 11040; *see also Martinez*, 49 Cal. 4th at 63. This definition encompasses scenarios where multiple entities exercise control over distinct aspects of the employment relationship—for example, where one entity hires and pays the workers while

another oversees their day-to-day supervision. *Martinez*, 49 Cal. 4th at 59. Some courts have limited this definition's reach by declining to impose employer liability on entities that may influence employee treatment but do not have the authority to directly control wages, hours, or working conditions. *See, e.g.*, *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1233 (N.D. Cal. 2015) (interpreting *Martinez*).

### 2.    Suffer or Permit to Work

The phrasing of the second prong of *Martinez* stems from "early 20th-century statutes prohibiting child labor," but it "continues to be highly relevant." 49 Cal. 4th at 69. For this prong, liability arises from the business's failure to ensure that a prohibited condition does not exist. *Id.* Thus, for example, a business owner "who knows that persons are working in his or her business without having been formally hired, or while being paid less than the minimum wage, clearly suffers or permits that work by failing to prevent it, while having the power to do so." *Id.*; *see also Futrell v. Payday Cal., Inc.*, 190 Cal. App. 4th 1419, 1434 (2010). Liability is based on the defendant's awareness of the work being performed and the defendant's failure to take steps to prevent that work. *Martinez*, 49 Cal. 4th at 69.

### 3.    Common Law Employment

Under the third prong of *Martinez*, "to engage" refers to the formation of a common law employment relationship. 49 Cal. 4th at 64. "The essence of the common law test of employment is in the 'control of details.'" *Futrell*, 190 Cal. App. 4th at 1434. Various factors may be considered in evaluating such control including:

> (1) [W]hether the worker is engaged in a distinct occupation or business; (2) whether, considering the kind of occupation and locality, the work is usually done under the alleged employer's direction or without supervision; (3) the skill required; (4) whether the alleged employer or worker supplies the instrumentalities, tools, and place of work; (5) the length of time the services are to be performed; (6) the method of payment, whether by time or by job; (7) whether the work is part of the alleged employer's regular business; and (8) whether the parties believe they are creating an employer-employee relationship.

24cv2340

*Id.* (collecting cases).

### ii.    Integrated Enterprise

"An employee who seeks to hold a parent corporation liable for the acts or omissions of its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy burden to meet under both California and federal law." *Laird v. Cap. Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737 (1998).  In determining whether entities are liable as an integrated enterprise, four factors are considered: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Id.*  This test has frequently been used in cases involving claims under Title VII and California's Fair Employment and Housing Act ("FEHA").  *See, e.g.*, *Morgan v. Safeway Stores*, 884 F.2d 1211, 1213 (9th Cir. 1989) (applying the four-factor test in an action involving violations of Title VII); *Laird*, 68 Cal. App. 4th at 737 (applying the "integrated enterprise" test in a FEHA action).  Courts have also applied this test in the context of claims arising from alleged violations of the California Labor Code and the FLSA.  *See Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1237–42 (C.D. Cal. 2007) (determining whether the defendant was an employer under the integrated enterprise test in an action alleging various labor code violations).[2]

### iii.    Alter Ego

"The equitable alter ego doctrine governs whether two separate entities may be treated as the same entity." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (citing *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 545–46 (9th Cir. 1985)). The doctrine applies where "(1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable

---

[2] *See also Huse v. Auburn Honda*, No. Civ. S-04-0227 DFL/JFM, 2005 WL 1398521, at *3 n.3 (E.D. Cal. June 10, 2005) (referencing the integrated enterprise test to determine whether a defendant meets the definition of an employer under the California Labor Code); *Luna v. Universal Studio City Prods. LLLP*, No. CV 12-9286 PSG (SSX), 2013 WL 12308198, at *3–4 (C.D. Cal. Aug. 27, 2013) (same); *Perez v. DXC Tech. Servs. LLC*, No. 17-CV-06066-BLF, 2020 WL 5517276, at *5 (N.D. Cal. Sept. 14, 2020) (applying the integrated enterprise test in an action arising from alleged violations of the California Labor Code and the FLSA).

result will follow if the acts are treated as those of the corporation alone." *RRX Indus.*, 772 F.2d at 545 (citing *Automotriz Del Golfo De Cal. S.A. De C. V. v. Resnick*, 47 Cal. 2d 792, 796 (1957)); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017).

> In assessing alter ego, courts consider the commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Sandoval*, 34 F. Supp. 3d at 1040. "Common ownership alone is insufficient to disregard the corporate form." *Id.* Lastly, "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003). "Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Id.*

### 2.   Multiple Employer Allegations

With those doctrines in the background, the Complaint sets forth the following allegations to establish Centerra Group's and Constellis's employment of Plaintiffs:

(1)   Centerra Group and "any related affiliate companies and successors" are listed as the "Company" on the "Proprietary and Intellectual Property Agreement" signed by employees. (SAC ¶ 21(a).)

(2)   Plaintiff Miranda requested his employment records from Constellis, and Constellis's corporate paralegal responded to this request and provided such records on Constellis letterhead. (*Id.* ¶ 21(b).)

(3)   Constellis is the only entity listed on the acknowledgement form executed by Plaintiffs to accept cash in lieu of benefits. (*Id.* ¶ 21(c).)

(4)   Constellis sought Plaintiffs' authorization for and conducted Plaintiffs' pre-employment background checks. (*Id.* ¶ 21(d).)

24cv2340

(5)   Plaintiffs acknowledged the Code of Business Ethics and Conduct, which identifies Constellis as the sole entity and requires employees to support its objectives. (*Id.* ¶ 21(e).)

(6)   Plaintiffs completed an employee demographics disclosure stating that Constellis and its affiliates are subject to federal reporting requirements. (*Id.* ¶ 21(g).)

(7)   Plaintiffs communicated by email with Constellis management about company policies, payroll, pay rates, and terms of employment. (*Id.* ¶ 21(h).)

(8)   Plaintiffs accepted job offers by responding to Constellis management. The offer letters from the Constellis North America Recruiting Team detailed the position, manager, pay rate, start date, bonus, pre-hire requirements, and Health and Welfare payments. (*Id.* ¶ 21(i).)

(9)   Plaintiffs' time records show "Centerra, a Constellis Company," as their employer. (*Id.* ¶ 21(j).)

(10)  "Centerra" was listed on Plaintiffs' nametags and uniforms. (*Id.* ¶ 21(k).)

(11)  Constellis appears on various other documents within Plaintiffs' personnel files. (*Id.* ¶ 21(l).)[3]

(12)  Plaintiffs were enrolled in the Constellis 401(k) Plan and received safe harbor contributions. (*Id.* ¶ 21(m).)

Plaintiffs allege that all three Defendants are joint employers that not only jointly operate through management, HR, and payroll functions, but also exercise control over wages, hours, and working conditions. (SAC ¶¶ 22–23.) Plaintiffs further assert that Defendants constitute an integrated enterprise—sharing common management, interrelated

---

[3] Constellis is listed on the following forms, which Plaintiffs allege are standard new hire forms: "Emergency Contact Form, Invitation to Self-Identify Protected Veteran Status, psychological testing completion notice (which indicates [each Plaintiff] was fit for duty for assignment with Constellis), Anti-Retaliation and Whistleblower Policy Acknowledgment (noting that all complaints should be made up the chain of command, to a manager, or to Human Resources at hr@constellis.com), and other policy acknowledgments." (SAC ¶ 21(l).)

operations, centralized labor control, and financial ownership—and that, upon information and belief, Defendants functioned in at least one respect as alter egos of each other.  (*Id.* ¶¶ 23–26.)

### i.    Constellis as an Employer

Based on the *Bonnette* factors and the first definition of employment under *Martinez*, Plaintiffs' factual allegations plausibly establish that Constellis qualifies as their employer for both the FLSA and California law.  The appearance of "Constellis" on paystubs and policy documents—without more—does not give rise to a reasonable inference that Constellis is a joint employer.  *Cf. Perez*, 2020 WL 5517276, at *4–5 (finding a failure to establish joint employer status despite the entity's logo on paystubs and concluding that written policies alone do not prove control over day-to-day management).  However, Plaintiffs' Complaint goes beyond that allegation.  Plaintiffs allege that Constellis was the one that provided Plaintiffs with their offer letter listing "rates of pay, start date, hiring bonus, pre-hire requirements (background check, drug screen, paperwork, etc.), and . . . the Health and Welfare cash payments."  (SAC ¶ 21(i).)  Plaintiffs further claim that, in accepting the offer, they communicated with Constellis management.  (*Id.* ¶ 21(h).)  Additionally, Plaintiffs allege they were informed of "policy changes [and] payroll changes (including pay rates and terms of employment)" by Constellis management.  (*Id.*)  Finally, Plaintiff Miranda alleges he requested his employment records from Constellis, and Constellis's Corporate Paralegal responded by providing Miranda's records on Constellis letterhead.  (*Id.* ¶ 21(b).)  These facts support a reasonable inference that Constellis possesses the authority to hire employees, determine employment terms, and adjust payment rates or methods.  Constellis's control over employment records is also consistent with this inference.

Thus, the Court denies Defendants' Motion to Dismiss Plaintiffs' claims against Constellis.  In reaching this conclusion, the Court need not address whether the claims against Constellis survive Defendants' challenge under the theories of integrated enterprise

or alter ego.  Nor need the Court resolve whether the allegations against Constellis satisfy the alternative definitions of employment under California law.

### ii.    Centerra Group as an Employer

Plaintiffs' allegations regarding Centerra Group's status as their employer are in large part conclusory and insufficient to overcome Defendants' Motion to Dismiss. Plaintiffs cite to one employment document containing Centerra Group's name—the "Proprietary and Intellectual Property Agreement," which defines Centerra Group as the "Company" that maintains employment with the "Employee." (SAC ¶ 21(a).)  In addition, Plaintiffs cite to two other items containing only the name "Centerra." (*Id.* ¶ 21 (j)–(k).) Specifically, Plaintiffs allege that "Centerra" appeared on their nametags, and "Centerra, a Constellis Company," was found on their time records. (*Id.*)  While Centerra Group contains the name "Centerra," so does Centerra Services, which is the entity shown on Plaintiffs' paystubs. (*Id.* ¶ 19.)  Plaintiffs plead no other facts regarding Centerra Group, and any other allegations concerning Centerra Group's status as a joint employer are purely conclusory. (*See id.* ¶¶ 19, 25–26.)  Hence, although "Centerra" appearing on Plaintiffs' nametags and some records may be consistent with liability for Centerra Group, the allegations "stop[] short of the line between possibility and plausibility of 'entitlement to relief'" where multiple alleged employers share the name "Centerra." *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also id.* at 679 (noting courts must "draw on [their] judicial experience and common sense" when determining plausibility).

Based on the sparse factual allegations, the Court cannot conclude that Centerra Group is a joint employer, part of an integrated enterprise, or an alter ego of Plaintiffs' employer. *See Bonnette*, 704 F.2d at 1470 (FLSA); *Martinez*, 49 Cal. 4th at 64 (California law); *Laird*, 68 Cal. App. 4th at 737–38 (integrated enterprise); *Sandoval*, 34 F. Supp. 3d at 1040–41 (alter ego).  And because Plaintiffs' claims against Centerra Group hinge on its status as an employer, all of those claims are subject to dismissal under Rule 12(b)(6).

That said, the Court grants Plaintiffs leave to amend their claims against Centerra Group.  *See* Fed. R. Civ. P. 15(a).  "Leave to amend should be granted unless the court

24cv2340

determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (citation modified). An amended pleading could plausibly state there is an employment relationship between Plaintiffs and Centerra Group. The Court thus grants Defendant's Motion to Dismiss the claims against Centerra Group with leave to amend.

### C.    Failure to Pay Overtime and the Minimum Wage

The Court turns to Defendants' challenges to Plaintiffs' specific causes of action. Defendants first raise arguments attacking claims one through four, which seek unpaid overtime and wages under FLSA and California law.

#### i.    Overtime Pay

Plaintiffs allege that they "often worked off-the-clock due to Defendants' policy and practice of automatically deducting an unpaid 30-minute meal period regardless of their ability to take one." (SAC ¶ 42.) As a result, Plaintiffs were deprived of their regular wages whenever their time records were modified to show a meal period that was shortened, interrupted, or not taken. (*Id.* ¶ 43.) Plaintiffs further claim this practice resulted in unpaid overtime. (*Id.* ¶ 45.) Defendants contend that Plaintiffs' claims do not meet the required pleading standard, asserting that the allegations are too vague and that Plaintiffs fail to provide a "single example" where time records were allegedly altered. (Mot. 12:9–13:4.)

In *Landers v. Quality Communications, Inc.*, the Ninth Circuit held that, to survive a motion to dismiss, plaintiffs asserting an FLSA claim to overtime payments must allege that they worked more than 40 hours in a given work week without being compensated for overtime. 771 F.3d 638, 644–45 (9th Cir. 2015). Although "detailed factual allegations regarding the number of overtime hours worked are not required to state a plausible claim," the plaintiff cannot just recite the statutory language in conclusory terms. *Id.* at 644; *see also Boon v. Canon Bus. Sol. Inc.*, 592 F. App'x 631, 632 (9th Cir. 2015) (applying *Landers* and reasoning it is sufficient for plaintiffs to identify tasks for which they were not paid

and to allege that they regularly worked more than eight hours in a day and forty hours in a week).

Here, Plaintiffs' allegations satisfy the necessary pleading requirements. Plaintiffs' Complaint alleges that:

> [A]s a result of Defendants editing Plaintiffs' . . . time records to include false meal periods, Defendants failed to compensate Plaintiffs . . . for all overtime hours worked. Each time this practice resulted in unpaid work over 8 hours in a day or 40 hours in a week, this resulted in unpaid overtime. This occurred each week during Plaintiffs' employment.

(SAC ¶ 45.)

In addition, Plaintiffs' Complaint contains other facts relevant to such claims. "The off the clock work occurred due to the automatic entry of meal periods by Defendants, regardless of whether meal periods were actually taken." (SAC ¶ 54.) For example, the Complaint states that Plaintiff Miranda recalls a time when he was "instructed to change his entry from 'False' to 'True' when asked if he took a meal break when in reality, he did not." (*Id.* ¶ 59.) Further, Plaintiffs point to one of Miranda's paystubs to demonstrate a purported inaccurate calculation of pay, which resulted in incorrect payment of overtime. (*Id.* ¶ 48.) Contrary to Defendants' claim, Plaintiffs need not plead more details to state an unpaid overtime claim under *Landers. See* 771 F.3d at 644–45; *see also Varsam v. Lab'y Corp. of Am.*, 120 F. Supp. 3d 1173, 1178 (S.D. Cal. 2015) (finding that *Landers* does not require a plaintiff to plead particular instances in which he or she worked overtime). Accordingly, based on the foregoing factual allegations, Plaintiffs have sufficiently pled that they were not paid for overtime under the FLSA. The same holds true for Plaintiffs' similar California state law claims.

### ii.    Rate of Pay Calculation

Plaintiffs further allege that their overtime pay was not accurately paid at Plaintiffs' "regular rate" of pay. (SAC ¶¶ 46–47.) Plaintiffs argue that Defendants miscalculated their regular rate of pay by excluding payments made in lieu of health and welfare benefits. (*Id.* ¶ 47.) Defendants, however, argue that those fringe benefit payments are excluded

from the regular rate of pay calculation pursuant to the Service Contract Act, 41 U.S.C. §§ 6701–07.  (Mot. 14:3–15:21.)

### a.    Overtime under FLSA

Under federal law, overtime compensation is based on a multiple of an employee's "regular rate."  29 U.S.C. § 207(a)(1).  Employers must pay at least one and a half times the employee's "regular rate" for hours worked in excess of 40 hours per week.  *Id.*  The regular rate "shall be deemed to include all remuneration for employment" paid to an employee, unless one of the eight statutory exclusions set forth in 29 U.S.C. § 207(e)(1)–(e)(8) applies.  29 U.S.C. § 207(e); *see also Flores v. City of San Gabriel*, 824 F.3d 895, 901 (9th Cir. 2016).

As mentioned, Plaintiffs received "cash in lieu of benefits" payments from Defendants as part of their employment.  (SAC ¶ 16.)  FLSA's eight exclusions from an employee's "regular rate" do not plainly cover this type of payment.  *See* 29 U.S.C. § 207(e)(1)–(8) (excluding only "contributions irrevocably made by an employer to a *trustee or third person* pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees" (emphasis added).)

The Court also has the benefit of the Ninth Circuit's guidance on this point.  In *Flores v. City of San Gabriel*, the city defendant argued that cash-in-lieu-of-benefits payments could fall under two of FLSA's exclusions: § 207(e)(2) and (e)(4).  824 F.3d at 897–03.  The Ninth Circuit rejected this argument and held the city's payments "are not properly excluded from the calculation of the regular rate of pay under either" exclusion.  *Id.* at 907.

Given *Flores*, Plaintiffs have a compelling argument that Defendants' cash-in-lieu payments should have been included in Plaintiffs' "regular rate" for purposes of determining their overtime compensation under FLSA.  824 F.3d at 907.  And because their regular rate would be higher, Plaintiffs would be entitled to more compensation per hour of overtime worked.  *See* 29 U.S.C. § 207(a).  Thus, this issue turns on whether the Service Contract Act nonetheless excludes the cash-in-lieu payments from FLSA's regular rate calculation.

24cv2340

### b.    Service Contract Act

Plaintiffs allege they worked as part of Defendants' contract with U.S. Customs and Border Protection.  (*See* SAC ¶ 21(j) (alleging the employment offer was "for the position of Security Guard III, CBP-SW-SCA Border Program, reporting to [the] Contract Manager").)  Defendants argue this fact means the Service Contract Act ("SCA") applies, and Plaintiffs do not contend otherwise.[4]  (*See* Opp'n 11:24–16:21.)

The SCA "requires government service contractors to satisfy certain minimum standards for wages and working conditions."  *Menlo Serv. Corp. v. United States*, 765 F.2d 805, 807 (9th Cir. 1985).  One such requirement is to provide "fringe benefits," which include health, retirement, insurance, vacation, and other related benefits determined by the Secretary of Labor.  *See* 41 U.S.C. § 6703(2).  However, the SCA affords contractors the flexibility to discharge this obligation "by furnishing any equivalent combinations of fringe benefits or by making equivalent or differential payments in cash."  *Id.*  Plaintiffs allege Defendants did the latter, as the employees were paid in lieu of benefits in the form of "Health & Welfare Cash Payment[s]."  (SAC ¶¶ 16, 21(i), 39(d).)

The Ninth Circuit has not addressed the interaction between the SCA and FLSA on this issue.  The relevant provision of the SCA is Section 6707(e), which reads:

> In determining any overtime pay to which a service employee is entitled under Federal law, the regular or basic hourly rate of pay of the service employee does not include any fringe benefit payments computed under this chapter which are excluded from the definition of "regular rate" under section 7(e) of the Fair Labor Standards Act of 1938 (29 U.S.C. 207(e)).

41 U.S.C. § 6707(e).  The sticking point is the final clause of the statute that addresses "any fringe benefit payments . . . which are excluded from the [FLSA's] definition of 'regular rate.'"  *Id.*  Defendants read the final clause as creating an SCA-specific exclusion that operates even when the fringe benefit payments fall under "the definition of 'regular rate'

---

[4]  *See* 41 U.S.C. § 6702(a) ("[The SCA] applies to any contract . . . that—(1) is made by the Federal Government . . . ; (2) involves an amount exceeding $2,500; and (3) has as its principal purpose the furnishing of services in the United States through the use of service employees.").

under section 7(e) of the [FLSA]."  *See id.*  In other words, under this broader interpretation of Section 6707(e), the SCA is creating a different rule for calculating overtime pay under federal law for covered contracts than the rule that would normally exist under the FLSA. *See id.*

Plaintiffs, on the other hand, read the final clause as cross-referencing the FLSA to make clear that only those fringe benefit payments "which are excluded from the definition of 'regular rate' under section 7(e) of the [FLSA]" are excluded from the calculation of overtime pay for contracts subject to the SCA.  *See* 41 U.S.C. § 6707(e).  Under this narrower interpretation of Section 6707(e), the SCA is limiting the SCA's exclusion to the subset of fringe benefit payments that are already excluded under FLSA, and Congress is making it clear that a different rule does not apply for fringe benefit payments made to employees working under covered contracts.  *See id.*

Both sides bolster their preferred interpretation with more authority.  Defendants rely on the Department of Labor's ("DOL") regulations. (Mot. 14:20–15:11.) Specifically, Defendants cite to 29 C.F.R. § 4.177(e), which states:

> If [an employer] furnishes equivalent benefits or makes cash payments, . . . the amounts thereof, which discharge the employer's obligation to furnish such specified fringe benefits, may be excluded pursuant to this Act from the employee's regular or basic rate of pay in computing any overtime pay[.]

Further, Defendants reference another DOL regulation interpreting the SCA, which states:

> If the employer furnishes equivalent benefits or makes cash payments, or both, to an employee . . . the amounts thereof, to the extent that they operate to discharge the employer's obligation under the [Service Contract] Act to furnish such specified fringe benefits, may be excluded pursuant to such Act from the employee's regular or basic rate of pay in computing any overtime pay . . . . This means that such equivalent fringe benefits or cash payments which are authorized under the [Service Contract] Act to be provided in lieu of the fringe benefits specified in determinations issued under such Act are excludable from the regular rate in applying the overtime provisions of the [FLSA].

29 C.F.R. § 778.7.

24cv2340

Plaintiffs, however, point to a body of case law adopting the narrower interpretation of Section 6707(e).  Some decisions dating as far back as 1974 have reasoned the SCA "explicitly states that 'the regular or basic hourly rate of pay' will include no fringe benefits not includable in the regular rate under the [FLSA]."  *Masters v. Md. Mgmt. Co.*, 493 F.2d 1329, 1332 (4th Cir. 1974) (interpreting same text of the SCA when it was codified at 41 U.S.C. § 355).  That is, the SCA incorporates the FLSA, but the SCA does not exclude any and all fringe benefit payments from overtime pay.  *See id.*  Further, courts have determined the DOL's interpretation is inconsistent with the plain text of the SCA.  *E.g.*, *Barnes v. Akal Sec., Inc.*, No. 04-cv-1350, 2005 WL 1459112, at *3–5 (D. Kan. June 20, 2005); *Bonner v. Metro. Sec. Servs., Inc.*, No. 10-CV-937, 2011 WL 902252, at *1–3 (W.D. Tex. Mar. 15, 2011).  The *Barnes* court also found the narrower interpretation is supported by legislative history, which notes that Section 6707(e) serves "the purpose of underlining and emphasizing the need for consistency in administration and in presentation of overtime under all of these statutes in a standard way."  *See* 2005 WL 1459112, at *4 (quoting *Service Contract Act of 1965: Hearing on H.R. 10238 Before the Special Subcomm. on Labor of the House Comm. on Education and Labor*, 89th Cong. 8 (Aug. 5, 1965) (statement of Charles Donahue, Solicitor of Labor, Dep't of Labor)).

More courts have joined the fray after the Supreme Court overruled *Chevron* deference in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).  In this District, decisions from the Honorable Barry Ted Moskowitz and M. James Lorenz have adopted the narrower interpretation.  Judge Moskowitz reasoned, "Under Section 6707(e)'s plain language, fringe benefits payments are excludable from the regular rate of pay only if they are excluded under Section 207(e). In other words, Section 6707(e) simply incorporates Section 207(e)'s exceptions, and Defendants have not shown that the fringe benefits payments are excludable under Section 207(e)."  *Williams v. Enter. Res. Plan. Int'l, LLC*, No. 25-cv-234-BTM-AHG, 2025 WL 1784628, at *2 (S.D. Cal. June 26, 2025); *see also Oliverio-Still v. AVMAC LLC*, No. 24-CV-0870-L-DEB, 2025 WL 674552, at *5 (S.D. Cal. Mar. 3, 2025) (Lorenz, J.) (reasoning the same).

1    Even so, at least two decisions have adopted the broader interpretation of Section

2  6707(e) endorsed by the DOL.  *See Phelps v. Parsons Tech. Support, Inc.*, No. 09-cv-0327,

3  2010 WL 4386920, at *1–2 (S.D. Ind. Oct. 29, 2010); *Kuentz v. CACI Int'l, Inc.*, No. 24-

4  CV-2496 (DLF), 2025 WL 2779954, at *8 (D.D.C. Sept. 30, 2025).  Most recently, in a

5  decision from the District of Columbia, the *Kuentz* court looked to the rules of grammar,

6  noting that the final clause of Section 6707(e) employs an "unfastidious wording"—a

7  "*which* without a comma."  2025 WL 2779954, at *6 (quoting Antonin Scalia & Bryan A.

8  Garner, *Reading Law* 142 (2012)).  Ideally, if Congress had wanted the final clause of

9  Section 6707(e) to remove from overtime pay only those fringe benefit payments already

10  excluded under FLSA, then Congress would have used a "that"—instead of a comma-less

11  "which"—to introduce the final clause.  *See id.*  Yet, because "Congress does not always

12  follow [this] rule," the *Kuentz* court found it needed to further examine the rest of the

13  statutory text.  *Id.*

14    The *Kuentz* court then reasoned that "Section 6707(e)'s use of the expansive phrase

15  'any fringe benefit payments' supports" that Section 6707(e) should be afforded the

16  broader interpretation of excluding "any" fringe benefit payments from FLSA's regular

17  rate calculation.  *Id.*  Finally, the court relied heavily on the rule against superfluity,

18  reasoning that the broader interpretation of the final clause is necessary to give it meaning.

19  *See id.* at *7 (reasoning the final clause can be given effect if it "clarifies that any such

20  fringe benefits are excluded from the FLSA's broader definition of 'regular rate'").

21    Although the *Kuentz* court's analysis is thorough, the Court remains unpersuaded by

22  the broader interpretation of Section 6707(e).  If Congress had wanted the SCA to exclude

23  "any" fringe benefits from the calculation of employees' overtime pay, then there would

24  be no reason to include the final clause in the statute.  Section 6707(e) would simply read:

25  "In determining any overtime pay to which a service employee is entitled under Federal

26  law, the regular or basic hourly rate of pay of the service employee does not include any

27  fringe benefit payments computed under this chapter[.]"  That statutory text is sweeping

28  and broad, and there is no doubt that "under federal law" encompasses the FLSA when

Section 6707(e) is discussing the calculation of "the regular or basic hourly rate of pay." *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 533 n.4 (2009) ("In both the statutory and regulation context, 'federal law' obviously means federal statutes."); *cf. Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 383 (2013) (reasoning a phrase might not be superfluous if it is included to foreclose doubt about an issue).

Hence, the fact that Section 6707(e) includes the final clause shows Congress intended to limit the broad phrase "any fringe benefit payments" to those benefits "which are excluded from the definition of 'regular rate' under section 7(e) of [FLSA]."  And it is this narrower reading of the statute that ultimately gives meaning to the final phrase of Section 6707(e) and prevents it from being merely surplusage.  Consequently, after following this thread to the end, the Court finds Section 6707(e) is clear on its face.  The regular rate under covered contracts does not include any fringe benefit payments that are excluded from FLSA's definition of "regular rate."  And the Court declines to adopt a regulatory interpretation that is at odds with the plain text.  *See Loper Bright*, 603 U.S. at 402–03; *see also, e.g.*, *Williams*, 2025 WL 1784628, at *2 ("Because Defendants' argument is inconsistent with the plain language of Section 6707(e), the DOL's regulations do not govern.").  Thus, Defendants' argument is rejected.

\* \* \*

Overall, because Plaintiffs sufficiently allege that they were not paid overtime in a given workweek under the standard set forth in *Landers*, and because the SCA and FLSA do not exclude the alleged cash-in-lieu-of-benefits payments from the "regular rate" of pay, the Court denies Defendants' motion to dismiss causes of action one through four.

### D.    Meal and Rest Period Violations

Plaintiffs allege that Defendants not only altered their time records to show meal periods that were never taken, but Defendants also failed to provide all required rest periods and to pay the corresponding meal and rest period premiums owed.  (SAC ¶¶ 55, 58–60.)  Defendants argue that Plaintiffs' allegations regarding meal and rest period violations are "boilerplate and conclusory."  (Mot. 16:8.)  Defendants contend the fifth and sixth causes

- 24 -

24cv2340

of action should be dismissed because the Complaint fails to: (1) point to a specific day on which Plaintiffs allegedly missed a meal or rest break; (2) allege the approximate frequency of missed breaks; and (3) allege facts as to what demands and pressures interfered with their ability to take timely meal breaks.  (*Id.* 15:25–17:10.)

California law "obligates employers to afford their nonexempt employees meal periods and rest periods during the workday."  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1018 (2012); *see also* Cal. Lab. Code § 226.7(a).  California Labor Code section 512(a) provides that "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes."  *See also* Cal. IWC Wage Order No. 4-2001 § 11.  Under certain circumstances, the meal period may be waived by mutual consent of the employer and employee.  *Id.*

The employer satisfies its obligation if "it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so."  *Brinker*, 53 Cal. 4th at 1040.  The statute and corresponding wage order do not require employers to "police meal breaks and ensure no work thereafter is performed"; rather, "[b]ona fide relief from duty and the relinquishing of control satisfies the employer's obligations."  *Id.* at 1040–41.

Here, the allegations set forth are sufficient to state a claim that is plausible on its face.  While Plaintiffs' allegations are not detailed, the pleading standard does not require the degree of exactness demanded by Defendants.  Plaintiffs allege that Defendants altered their time records to reflect a 30-minute meal period that was either not taken or was shortened or interrupted.  (SAC ¶ 43.)  Plaintiffs further allege that "Defendants had an unlawful policy and practice of requiring Plaintiffs . . . to work through their unpaid meal periods."  (*Id.* ¶ 59.)  The Complaint states, in support of these allegations, that:

> Plaintiff Miranda recalls being instructed to change his entry from "False" to "True" when asked if he took a meal break when in reality, he did not.

> Plaintiff Miranda was told that management would not submit his time entry if he didn't select "True." Due to the manipulation, work was done off the clock, resulting not only in premium pay violations, but unpaid overtime and minimum wage for those hours, as applicable.

(*Id.* ¶ 59.) Implicit in this allegation is that Miranda worked at least five hours and should have received a meal break. The Complaint further states that "Miranda has a time record dated 12/15/2024 [that] reveals hours worked without a meal period and without a corresponding meal period premium paid at the lawful rate of pay on the associated paystub." (*Id.* ¶ 54.)

Moreover, the Complaint alleges Plaintiffs "experienced non-compliant meal periods" and rest periods due to "the pressure to keep up with the high demands of the job." (SAC ¶ 60; *see also id.* ¶ 58.) Plaintiffs allege they were often not relieved of their job duties because supervisors "did not want to sit in the [security] pods while employees were on break." (*Id.* ¶ 60.) Additionally, Plaintiffs claim "Defendants had an unlawful policy and practice of encouraging Plaintiffs . . . to work through their rest periods without being paid rest period premiums." (*Id.* ¶ 61.)

In sum, Plaintiffs have provided more than just "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555. When construed in Plaintiffs' favor, these allegations plausibly state that Defendants failed to provide required meal and rest periods. Thus, the Court denies Defendants' Motion to Dismiss causes of action five and six.

### E. Paid Sick Leave

Plaintiffs allege Defendants failed to pay Plaintiffs accurate paid sick leave in violation of the Healthy Workplaces, Healthy Families Act of 2014 (the "Act"), Cal. Lab. Code §§ 245–49, because Defendants failed to include the additional remuneration Plaintiffs received when calculating their regular rate of pay, resulting in inaccurate sick wages. (SAC ¶¶ 53, 119–29.) Additionally, Plaintiffs claim they did not receive their total accrued sick leave time as a result of working off-the-clock overtime hours. (*Id.* ¶¶ 54,

119–29.)  Defendants move to dismiss Plaintiffs' seventh cause of action, arguing there is no private right of action for unpaid sick leave under this Act.  (Mot. 17:11–18:21.)

California Labor Code section 246 requires employers to provide most California employees with no less than "one hour [of sick pay] per every 30 hours worked."  Cal. Lab. Code § 246(b)(1).  Labor Code section 248.5 provides for civil penalties for the violation of section 246.  *Id.* § 248.5(e).

Defendants assert that there is no private right of action for a violation of Labor Code section 246 because the only enforcement mechanism under the Act is found in section 248.5(e), which grants the right to sue solely to "[t]he Labor Commissioner or the Attorney General."  Cal. Lab. Code § 248.5(e).  Plaintiffs argue that because section 200 of the Labor Code defines wages broadly, employees have a right to sue for unpaid sick pay as "wages" under other provisions of the Labor Code.  (Opp'n 18:7–20:7.)  Plaintiffs also argue they can pursue a private action for damages because they do not rely on the "special powers" granted to the Labor Commissioner in issuing penalties under section 248.5(e).  (*Id.*)

Under California law, "a private right of action exists only if the language of the statute or its legislative history clearly indicates the Legislature *intended* to create such a right to sue for damages."  *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 62 (1999).  Courts should generally assume that if the Legislature intends to create a private right of action, "it will do so directly, in clear, understandable, unmistakable terms."  *Id.* (citation modified) (citing *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287, 294–95 (1988).

Labor Code section 248.5 outlines the mechanisms through which the state government may enforce the provisions of the Act.  *See* Cal. Lab. Code § 248.5(e).  Subdivision (d) authorizes any "employee or other person" to report potential violations related to sick pay to the Labor Commissioner.  *Id.* § 248.5(d).  Then, if necessary, "[t]he Labor Commissioner or the Attorney General may bring a civil action in a court of competent jurisdiction against the employer or other person violating this article."  *Id.* § 248.5(e).  Meanwhile, the provision that ordains sick leave, section 246, does not include

any language granting a private right of action—nor does it suggest that aggrieved employees may independently pursue such claims. *See id.* § 246. Accordingly, section 246 does not establish a private right of action because the statute's language does not "clearly indicate[ ] the Legislature *intended* to create such a right to sue for damages." *See Vikco Ins. Servs.*, 70 Cal. App. 4th at 62.

Plaintiffs' argument concerning the broad definition of wages, as well as their assertion that they are not relying on the mechanisms or remedies set forth in section 248.5, does not undermine this conclusion. Because Plaintiffs seek relief under section 246, and because that section must be read in conjunction with the enforcement framework in section 248.5, which does not provide a private right of action, their argument fails as a matter of law.

Other district courts interpreting section 246 have likewise concluded that it does not create a private right of action. In *Rudolph v. Herc Rentals*, the court similarly found that "it is clear that Labor Code section 246 creates no private right of action." No. 2:20-cv-05412-ODW (Ex), 2021 WL 5994514, at *3 (C.D. Cal. Aug. 27, 2021). Similarly, in *Diaz v. Rescare Inc.*, the court granted the defendant's motion for judgment on the pleadings with respect to the plaintiff's standalone claim for violations of the Act because it does not contain a private right of action. No. 4:20-cv-01333 YGR, 2020 WL 6270934, at *3 (N.D. Cal. Oct. 26, 2020); *accord Titus v. McLane Foodservice, Inc.*, No. 2:16-cv-00635-KJM-EFB, 2016 WL 4797497, at *4 (E.D. Cal. Sept. 14, 2016); *White v. Cap. One, Nat'l Ass'n*, No. 1:24-CV-00633-KES-SKO, 2024 WL 4555936, at *3 (E.D. Cal. Oct. 23, 2024); *see also Iloff v. Lapaille*, 18 Cal. 5th 551, 574 (2025) (reasoning that if an employee "could not pursue a Paid Sick Leave law claim in" an administrative appeal from the Labor Commissioner, then "the only remaining avenue of enforcement would be for the Labor Commissioner or the Attorney General to bring a separate enforcement action").

In light of the foregoing, the Court grants Defendants' Motion as to the seventh cause of action. As the seventh claim is necessarily based on the Act, which does not create a private cause of action, any amendment would be futile. Thus, this claim is

dismissed without leave to amend. *See Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

### F. Untimely Payment of Wages

Plaintiffs allege that Defendants failed to timely pay Plaintiffs all wages owed each pay period in violation of California Labor Code section 204. (SAC ¶¶ 130–33.) Defendants move to dismiss Plaintiffs' eighth cause of action, arguing that section 204 governs only the timing of wage payments, not the amount or type of wages paid. (Mot. 19:16–20:7.) Therefore, Defendants contend that Plaintiffs' claim—that certain portions of their wages were excluded from their paychecks during employment—does not constitute a violation of section 204. (*Id.*) In response, Plaintiffs assert that the plain language of section 204 supports their position. (Opp'n 20:20–21:23.) They argue that because Defendants willfully failed to timely pay *all* wages, including paid sick leave and meal and rest period premiums, Plaintiffs have stated a valid claim under section 204. (*Id.*)

California Labor Code section 204 provides in part that "[a]ll wages . . . earned . . . are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays." Cal. Lab. Code § 204(a). Contrary to Plaintiffs' contention, the California Court of Appeal reasoned this statute concerns the timing of wages, not the calculation of wages owed. "All wages" read in context with "subdivision (a) [of section 204] pertains to the timing of wage payments." *See's Candy Shops*, 210 Cal. App. 4th at 904. "Fundamentally, the question whether all wages have been paid is different from the issue of how an employer calculates the number of hours worked and thus what wages are owed." *Id.* at 905 (emphasis omitted).

Here, Plaintiffs do not allege any facts suggesting they failed to receive bimonthly wage payments as required by section 204. Instead, Plaintiffs merely allege they were not paid all wages owed, including paid sick leave and meal and rest period premiums. (SAC ¶ 132.) That allegation is not enough to state a plausible claim under section 204. *See See's Candy Shops*, 210 Cal. App. 4th at 904–05; *see also, e.g.*, *Azizpor v. Lowe's Home Centers, LLC*, No. 23-cv-452-LL-DDL, 2024 WL 1349650, at *4–5 (S.D. Cal. Mar. 29,

2024) (rejecting similar claim as "foreclosed by the controlling case law on this issue"); *Moreno v. C.H. Robinson Worldwide, Inc.*, No. 25-CV-02844-RFL, 2025 WL 2173958, at *4 (N.D. Cal. July 31, 2025) (same). Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' eighth cause of action without leave to amend because Plaintiffs' theory is not viable.

### G.    Wage Statement Violations

Plaintiffs contend Defendants failed to provide accurate itemized wage statements to Plaintiffs in violation of California Labor Code section 226. (SAC ¶¶ 134–38.) Defendants argue Plaintiffs' wage-statement claims should be dismissed because: (1) Plaintiffs merely allege a conclusory recitation of the elements of a wage statement claim under section 226(a); and (2) Plaintiffs have not pled that they suffered any cognizable injury. (Mot. 20:8–21:12.)

Section 226(a) requires an employer to provide its employees with an accurate, itemized pay statement, including the "gross wages earned" and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Lab. Code § 226(a). "To recover damages under section 226, subdivision (e), an employee must suffer injury as a result of a knowing and intentional failure by an employer to comply with the statute." *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (2011). An employee is deemed to have suffered an injury in some circumstances. Cal. Lab. Code § 226(e)(2). Further, "[w]hile there must be some injury in order to recover damages, a very modest showing will suffice." *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1306 (2010); *see also Naranjo v. Spectrum Sec. Servs., Inc.*, 15 Cal. 5th 1056, 1070 (2024) (noting "[t]o 'suffer injury' within the meaning of this provision is not quite what it sounds like"); *Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1142 (E.D. Cal. 2012) (reasoning an injury can be shown "through the possibility of not being paid overtime," as well as "employee confusion over whether they received all wages owed them").

24cv2340

In the Complaint, Plaintiffs allege that Defendants failed to "state the hourly rate at which the cash in lieu of benefits payment earnings were paid, and the corresponding number of hours at that rate." (SAC ¶ 66.) Moreover, Plaintiffs cite a paystub in which Plaintiff Miranda earned $365.60 for the health and welfare cash-in-lieu payment; however, Defendants did not include in this paystub the applicable hourly rate in effect or the number of hours worked at that rate. (*Id.* ¶ 68.) Separately, Plaintiffs state that because they worked during their meal periods, their paystubs failed to list all the hours they worked. (*Id.* ¶ 69.) Plaintiffs point to one instance where they claim Miranda earned a meal period premium, but the paystub fails to reflect that earned hour of premium pay. (*Id.* ¶ 54.) Plaintiffs also allege the failure to comply with the statute was knowing and intentional because Defendants "have previously been sued in prior class actions for this exact issue, but have failed to correct it." (*Id.* ¶ 66; *see also id.* ¶ 67.) Lastly, Plaintiffs allege the failure to provide accurate wage statements "caus[ed] confusion and conceal[ed] wage and premium underpayments." (*Id.* ¶ 137.)

When construing the factual allegations in Plaintiffs' favor, Plaintiffs' contentions are sufficient to state a plausible violation and injury under section 226. *See, e.g.*, *Radford v. Nexstar Broad., Inc.*, No. 24-CV-08118-RFL, 2025 WL 2597398, at *2 (N.D. Cal. Sept. 8, 2025) (denying motion to dismiss inaccurate wage statement claim with comparable allegations); *see also Naranjo v. Spectrum Sec. Servs., Inc.*, 15 Cal. 5th 1056, 1077 (2024) (explaining the California Supreme Court "dispelled any doubt there might have been about the permissibility of bringing this sort of derivative wage statement claim when [it] explained that the wage statement requirements apply to amounts earned" during the pay period (emphasis omitted)). Consequently, the Court denies Defendants' Motion to Dismiss the ninth cause of action.

## H.    Waiting Time Penalties

Plaintiffs' tenth cause of action alleges Defendants violated California Labor Code sections 201, 202, and 203 by willfully failing to pay Plaintiffs all their wages within seventy-two hours of their termination or resignation. (SAC ¶ 141.) California law

provides for penalties when an employer willfully fails to pay the final wages employees are owed at the end of their employment. Cal. Lab. Code § 203. A claim seeking these "waiting time" penalties is generally treated as derivative of a plaintiff's other labor law claims. *See, e.g.*, *McCowen v. Trimac Transp. Servs. (Western), Inc.*, 311 F.R.D. 579, 586 (N.D. Cal. 2015).

Defendants move to dismiss Plaintiffs' tenth cause of action for failure to pay wages upon separation, arguing that Plaintiff Miranda is still employed by Defendants and that the Complaint fails to plead facts regarding Plaintiff Carroll's separation date, the nature of his separation, and his final rate of pay. (Mot. 20:13–22:23.) Defendants further argue that Plaintiffs have not alleged sufficient facts to establish that the purported violations were willful. (*Id.*) Lastly, Defendants assert that a good faith dispute over the existence of any wages owed forecloses Plaintiffs' claim for penalties under Section 203. (*Id.*)

Miranda's Claim. Because Plaintiff Miranda is still allegedly employed by Defendants (SAC ¶ 12), and because this claim is dependent on the employee having separated from his employer, he cannot assert a claim under section 203. *See* Cal. Lab. Code § 201(a) (applying where "an employer discharges an employee"); *id.* § 202(a) (applying where "an employee not having a written contract for a definite period quits his or her employment"); *id.* § 203 (imposing penalties for an employer's failure to pay any wages of an employee who "is discharged or who quits"). The Court therefore grants Defendants' motion to dismiss Plaintiffs' tenth cause of action with respect to Miranda, a current employee of Defendants. *See Yorba v. Gov't Emps. Ins. Co.*, No. 24-cv-00031-GPC-VET, 2024 WL 3448090, at *7 (S.D. Cal. July 17, 2024); *McDowell v. Penske Truck Leasing Co.*, No. 5:23-cv-02406-ODW (ASx), 2024 WL 1354261, at *4 (C.D. Cal. Mar. 29, 2024). The Court dismisses Miranda's claim with leave to amend.

Carroll's Claim. With respect to Plaintiff Carroll, the Complaint pleads sufficient facts to plausibly state a claim for relief under section 203. Contrary to Defendants' contention, the law does not require this claim be pled with granularity, including the separation date, nature of separation, and final rate of pay, to survive a motion to dismiss.

*See Iqbal*, 556 U.S. at 678 (holding a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Here, the Complaint sufficiently alleges that Carroll ended his employment with Defendants in September of 2024, Defendants failed to pay all wages earned, and Defendants have failed to pay all wages due at separation. (SAC ¶¶ 13, 75, 139–42). Thus, Carroll has pled "sufficient factual matter, accepted as true," to state a plausible claim. *See Iqbal*, 556 U.S. at 678.

<u>Willfulness</u>. Further, the Complaint sufficiently pleads that Defendants' failure to timely pay all wages owed upon separation of employment was willful. The California Court of Appeal has held that the standard for "willful" conduct by an employer under section 203 is not high. *See Diaz v. Grill Concepts Servs., Inc.*, 23 Cal. App. 5th 859, 867 (2018) (reasoning a "failure to pay is willful if the employer knows what it is doing and intends to do what it is doing" (citation modified)). Additionally, the Ninth Circuit has recognized that "[a]t the pleading stage, a plaintiff need not allege willfulness with specificity." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 903 (9th Cir. 2013) (citing Fed. R. Civ. P. 9(b)).

Here, Plaintiffs claim "Defendants willfully failed and continue to fail" to pay all wages earned upon Carroll's separation from employment. (SAC ¶ 141.) Plaintiffs allege that Defendants regularly required Carroll to work through unpaid meal periods (*id.* ¶ 59), failed to accurately pay overtime and premiums for missed breaks (*id.* ¶ 64), and inaccurately calculated overtime by omitting the health and welfare cash benefit (*id.* ¶¶ 46– 47). Based on these facts, it can reasonably be inferred that Defendants willfully failed to pay wages they knew were owed. *See Varsam*, 120 F. Supp. 3d at 1179 (finding a reasonable inference of a defendant's willfulness based on plaintiff's factual allegations "of a regular practice by Defendant of not paying overtime or premiums for missed meals and rest breaks"). Plaintiffs' willfulness allegation is further supported by the factual assertion that Defendants have received notice of prior wage and hour violations under California law but have not corrected the violations. (*See* SAC ¶ 67.)

Good Faith Dispute. Lastly, Defendants' assertion of a "good faith dispute" regarding the wages owed to Plaintiff Carroll does not, at this stage, permit the dismissal of the tenth cause of action. An employer's failure to pay wages in accordance with section 203 is not willful if that failure is due to: (1) "uncertainty in the law," (2) representation by the taxing authority that no further payment was required, or (3) the employer's good faith mistaken belief that wages are not owed—"grounded in a good faith dispute"—that "exists when the employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." *Diaz*, 23 Cal. App. 5th at 868 (citation modified) (quoting cases and Cal. Code Regs. tit. 8, § 13520).

In this case, the issue of whether a "good faith dispute" exists as to the payment of the wages cannot be determined from the face of Plaintiffs' Complaint. When limited to the Complaint, the Court has no knowledge as to Defendants' "good faith" but "mistaken belief." *See Diaz*, 23 Cal. App. 5th at 868; *see also Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1057 (C.D. Cal. 2014) (explaining that at the pleading stage, a court may dismiss on the basis of an affirmative defense only if "the affirmative defense is apparent on the face of the complaint"). Indeed, most courts that have considered the "good faith dispute" defense have appropriately done so at the summary judgment stage. *E.g.*, *Boone v. Amazon.com Servs., LLC*, 562 F. Supp. 3d 1103, 1126–27 (E.D. Cal. 2022) (collecting cases).

Accordingly, the Court denies the remainder of Defendants' motion to dismiss Plaintiffs' tenth cause of action for failure to pay all wages due upon separation.

## I.    Request for Employment Files

Plaintiffs' twelfth cause of action concerns Defendants' alleged failure to provide employees with employment files on request. (SAC ¶¶ 146–54.) Specifically, Miranda alleges he requested from Defendants all records due under the law, but he did not receive his time records. (*Id.* ¶¶ 151–52.)

24cv2340

California Labor Code § 226(b) requires employers "to keep the information required by subdivision (a)"[5] and provides "current and former employees the right to inspect or receive a copy of records pertaining to their employment, upon reasonable request to the employer." An employer who receives a reasonable request "shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request." *Id.* § 226(c). The failure by an employer to comply within this timeframe "entitles the current or former employee or the Labor Commissioner to recover a seven-hundred-fifty-dollar ($750) penalty from the employer." *Id.* § 226(f). "An employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees." *Id.* § 226(h).

Comparably, California Labor Code section 1198.5 affords "[e]very current and former employee . . . the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee." Cal. Lab. Code § 1198.5(a). An employer is required to make these records available within "30 calendar days from the date the employer receives a written request." *Id.* § 1198.5(b). The failure to comply with this requirement, similar to section 226, entitles the requesting party to "recover a penalty of seven hundred fifty dollars ($750) from the employer" and to "bring an action for injunctive relief to obtain compliance with this section, and may recover costs and reasonable attorney's fees in such an action." *Id.* § 1198.5(k)–(*l*). Moreover, section 432 provides that "[i]f an employee or applicant signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of the instrument upon request." *Id.* § 432.

In addition, Section 7 of the IWC Wage Order requires employers to maintain accurate records for each employee, including "[t]ime records showing when the employee begins and ends each work period," as well as "[m]eal periods, split shift intervals, and

---

[5] As referenced above, under section 226(a), employers must provide employees with a written, itemized wage statement for each pay period that contains various categories of information, including the "total hours worked by the employee." Cal. Lab. Code § 226(a).

total daily hours worked." Cal. IWC Wage Order No. 4-2001 § 7. Those records must "be available for inspection by the employee upon reasonable request." *Id.* Last, under California Labor Code section 1174(d), an employer is required to keep "payroll records showing the hours worked" for employees and maintain those records "for not less than three years."

In October 2024, Miranda allegedly requested from Defendants all records due under the IWC Wage Order and the California Labor Code. (SAC ¶ 151.) In response, Miranda received most of the records requested but did not receive time records. (*Id.*) He subsequently notified Defendants of the missing time records, to which Defendants responded that the provided wage statements satisfied the production requirements. (*Id.*) Based on this, Miranda claims Defendants have violated the various Labor Code sections, and thus, he is entitled to penalties and injunctive relief for the absence of his time records. (*Id.* ¶ 154.) Defendants move to dismiss this claim on the grounds that none of the Labor Code provisions require Defendants to produce time records. (Mot. 23:1–15.)

Neither party cites to controlling case law on this point.[6] The Court zeroes in on section 226(b) because that law concerns wage statements and requires an employer to produce "a copy of records pertaining to [the employee's] employment." Cal. Lab. Code § 226(b). Given this context, Defendants argue "records pertaining to . . . employment" is limited to only "the information required by subdivision (a)"—that is, the itemized wage statements. (Mot. 23:1–15.) Miranda argues the phrase is broad enough to encompass the time records that are the basis for those paystubs. (Opp'n 24:4–17.)

The Court finds Miranda's claim is plausible, particularly considering the requirement that Defendants keep detailed time records under the IWC Wage Order and

---

[6] Plaintiffs cite a Los Angeles Superior Court decision finding that Labor Code section 226(b) appears to require the production of time records and employee handbooks. *Magallon v. Cedars-Sinai Med. Ctr., Los Angeles Cnty. Sup. Ct.*, No. 19STCV13442, 2020 Cal. Super. LEXIS 52468, *5 (July 8, 2020). The court explained that section 226(b) provides employees "the right to inspect or receive a copy of records pertaining to their employment," which is broader than the itemized wage statement referenced in subdivision (a). *Id.* Accordingly, the court concluded that Labor Code section 226(b) requires employers to produce time records and employee handbooks related to an employee's employment. *Id.*

California law.  The California Supreme Court has instructed that the Labor Code is "to be liberally construed" to protect and benefit employees.  *Brinker*, 53 Cal. 4th at 1026–27. Further, "[t]he IWC's wage orders are to be accorded the same dignity as statutes."  *Id.* at 1027.  "To the extent a wage order and a statute overlap, [the court] will seek to harmonize them, as [it] would with any two statutes."  *Id.*

Here, where employers are required to maintain and allow inspection of time records, Labor Code section 226(b) can be reasonably construed to encompass those records.  If the California Legislature had intended to limit section 226(b) to strictly the paystubs described in section 226(a), it could have done so.  Indeed, the overall statute interchangeably uses "itemized statement," "statement," and "wage statement" to describe those paystubs.  *See* Cal. Lab. Code § 226(a), (g), (j).  When the law grants an inspection right in Section 226(b), however, the statute uses a broader phrase: "records pertaining to . . . employment."  *See id.* § 226(b).  The use of that phrase—instead of those other narrower terms—suggests that the statute has a broader scope than that argued for by Defendants. *See People v. Trevino*, 26 Cal. 4th 237, 242 (2001) ("When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning.").

Further, when the Court construes the statute in context, the Court finds the time records at issue are "records pertaining to . . . employment."  *See* Cal. Lab. Code § 226(b). "Pertain" means "[t]o relate directly to; to concern or have to do with."  Pertain, Black's Law Dictionary (12th ed. 2024).  The time records pertain to employees' employment; they are the records that substantiate the itemized paystubs mandated under section 226(a).

Finally, "the core purpose of section 226 is to ensure an employer documents the *basis* of the employee compensation payments to assist the employee in determining whether he or she has been compensated properly. . . .  Section 226 is part of a matrix of laws intended to ensure workers are correctly and adequately compensated for their work." *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 752 (2020) (emphasis added) (citation modified).  Construing section 226(b) to encompass the underlying time records that an

24cv2340

employer is required to maintain supports the "remedial nature" of the statute. *See Ibarra v. Chuy & Sons Lab., Inc.*, 102 Cal. App. 5th 874, 880 (2024). Thus, the Court finds Miranda's claim is plausible, and the Court denies Defendants' motion to dismiss the twelfth cause of action.

### J. Unfair Competition

Plaintiffs assert that Defendants' repeated violations of wage and hour laws constitute an "unlawful" and "unfair" practice under the UCL. (SAC ¶ 156.) Plaintiffs seek restitution of their unpaid wages and other equitable relief for these violations. (*Id.* ¶ 160.) Defendants argue that this claim should be dismissed to the extent it relies on Plaintiffs' wage statement and waiting time penalty claims because the penalties for these claims are not recoverable under the UCL. (Mot. 23:15–24:11.) *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010); *see also Guerrero v. Halliburton Energy Servs., Inc.*, 231 F. Supp. 3d 797, 808 (E.D. Cal. 2017). Defendants further assert that Plaintiffs' pursuit of compensatory damages under the Labor Code for the alleged wage and hour violations precludes a showing of an inadequate legal remedy, which is necessary to support equitable relief under the UCL. (*Id.* 24:12–25:7.)

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The statute is "violated where a defendant's act or practice violates any of the [UCL's] prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). "[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). Accordingly, under the UCL, a plaintiff may only seek equitable relief through restitution and an injunction. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).

24cv2340

Initially, Plaintiffs concede that they "do not seek to enforce wage statement or waiting time claims under the UCL." (Opp'n 24:19–20.) Therefore, Defendants' first argument is moot.

As for Defendants' second challenge, the Court agrees that Plaintiffs have not adequately alleged that the remedies available to them under the California Labor Code are inadequate for all but one of their claims. In *Sonner v. Premier Nutrition Corp.*, the Ninth Circuit held that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL." 971 F.3d 834, 844 (9th Cir. 2020). "Since *Sonner*, courts have consistently dismissed purely derivative UCL claims in wage-and-hour actions in which damages and penalties are available for the same underlying Labor Code claims." *Mish v. TForce Freight, Inc.*, No. 21-CV-04094-EMC, 2021 WL 4592124, at *6 (N.D. Cal. Oct. 6, 2021) (collecting cases); *accord Moreno*, 2025 WL 3141862, at *3.

Some courts have reasoned "a shorter statute of limitations, when pled in the context of an alternative remedy, [may] render[] a legal remedy inadequate as a matter of law." *See Rivera v. Jeld-Wen, Inc.*, No. 21-CV-01816-AJB-AHG, 2022 WL 3219411, at *5 (S.D. Cal. Aug. 9, 2022) (noting an intra-circuit split on whether it is appropriate to dismiss UCL claims at the pleading stage when pled in the alternative, but ultimately concluding that this District's recent rulings permit such pleading). However, courts have also held that "a different limitations period is not sufficient to demonstrate inadequacy of a legal remedy." *Taylor v. Sam's W., Inc.*, No. CV 20-5380 DSF (JCX), 2020 WL 12947973, at *2 (C.D. Cal. Dec. 4, 2020).

Here, Plaintiffs allege "they do not have an adequate remedy at law without the UCL . . . , including the fact that the recovery sought [under the Labor Code] does not extend to the four-year limitation provided under the UCL." (SAC ¶ 159.) Plaintiffs argue their Labor Code claims are subject to a three-year limitations period instead of the four-year period under the UCL. (Opp'n 25:5–20.) Yet, even if a shorter statute of limitations was sufficient to show an inadequate legal remedy, Plaintiffs do not allege they are impacted

by that shorter period here.  Rather, the Complaint alleges Miranda has worked as a non-exempt employee since April 2024.  (*Id.* ¶ 12.)  Carroll, a former employee, worked from about July 2023 to September 2024.  (*Id.* ¶ 13.)  Therefore, when this action was filed in December 2024, the alleged conduct fell within the Labor Code's shorter, three-year limitations period.  *See, e.g.*, *Taylor*, 2020 WL 12947973, at *2 ("Taylor alleges she worked at Sam's Club from July 2, 2018 to November 7, 2019, 'so her damages or restitution would not be affected by whether the statute of limitations is three or four years.'").

Plaintiffs advance another possibility for the UCL.  They argue that "should the Court dismiss Plaintiffs' sick pay claim (seventh cause of action), these sick pay wages are recoverable as restitution under the UCL."  (Opp'n 24:21–25:2.)  *See, e.g.*, *Benyamin v. TopGolf Payroll Servs., LLC*, No. 2:23-CV-00303-DAD-SCR, 2025 WL 1650511, at *4 (E.D. Cal. June 11, 2025) (analyzing a UCL claim based on unpaid sick leave under California Labor Code section 246).  The Complaint alleges Plaintiffs lack an adequate remedy at law where there is no "private right of action."  (SAC ¶ 159.)  Defendants do not address this argument in their Reply.  (*See* Reply 10:7–17.)  Hence, at this juncture, the Court finds Plaintiffs' allegations on this point are sufficient.

Accordingly, the Court grants in part Defendants' request to dismiss the UCL claim. The Court dismisses this claim except to the extent it seeks restitution for unpaid sick leave where there is no cause of action under the California Labor Code.  Because this is the first dismissal, and because it may be possible for Plaintiffs to supplement their allegations concerning an inadequate remedy at law, the Court grants leave to amend this claim.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (ECF No. 23). Specifically:

**(1)** The Court **GRANTS** the Motion to Dismiss Counts One and Two under the FLSA with respect to any out-of-state plaintiffs where the conduct occurred outside of the

24cv2340

forum for lack of personal jurisdiction.    Those claims are **DISMISSED WITHOUT PREJUDICE**.

**(2)** The Court **GRANTS** the Motion to Dismiss all claims against Defendant Centerra Group for lack of an employment relationship.    The Court grants leave to amend these claims.

**(3)** The Court **GRANTS** the Motion to Dismiss Count Seven for paid sick leave violations under California Labor Code section 246.    This claim is dismissed **WITH PREJUDICE**.

**(4)** The Court **GRANTS** the Motion to Dismiss Count Eight for untimely payment of wages under California Labor Code section 204.    This claim is dismissed **WITH PREJUDICE**.

**(5)** The Court **GRANTS IN PART** the Motion to Dismiss Count Ten for waiting time penalties.    The Court dismisses the claim brought by Plaintiff Miranda, but not the claim brought by Plaintiff Carroll.    The Court grants leave to amend Miranda's claim.

**(6)** The Court **GRANTS IN PART** the Motion to Dismiss Count Thirteen for violation of the UCL to the extent this claim is based on any allegations other than unpaid sick leave.    The Court grants leave to amend this claim.

**(7)** The Court **DENIES** the Motion to Dismiss as to all other claims.

If Plaintiffs choose to file a Third Amended Complaint, it must be filed no later than **January 12, 2026**.    Plaintiffs may not add any new parties or causes of action without leave of court.    If Plaintiffs do not file a Third Amended Complaint, then Defendants Centerra Services and Constellis must answer the Second Amended Complaint no later than **January 19, 2026.**

IT IS SO ORDERED.

DATED: December 29, 2025

Hon. Cynthia Bashant, Chief Judge
United States District Court

24cv2340